598 A.2d 561

**Thomas Jay LAMBERT, Appellee,**

v.

**Susan K. LAMBERT, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 29, 1991.

Filed Oct. 28, 1991.

Susan K. Lambert, pro se.

Lynne Z. Gold–Bikin, Norristown, for appellee.

Sinikka Lawless, Norristown, amicus curiae for appellant.

Before DEL SOLE, TAMILIA and HOFFMAN, JJ.

DEL SOLE, Judge:

Following a number of years of court proceedings relating to the custody of the parties' children, the court, once again, entered an order regarding custody in response to a Petition to Modify Custody and a Petition for Contempt. The children's mother, Appellant (Mother) filed this appeal from the order which "upon her having failed to appear" decreed that custody of the parties' two daughters be transferred to Appellee (Father) "forthwith" and directed that the children be delivered immediately to the custody of law enforcement officials and/or their father. Mother's later petition for reconsideration of this order was denied.

The tortuous history of the custody of the parties' two minor children, Kerry born July 31, 1982 and Erin born June 22, 1984, has been gleaned from the record and the factual findings made in the thorough opinion authorized in 1989 by the Honorable Marjorie C. Lawrence. An examination of the past proceedings is vital to a review of this instant order.

Mother, an Australian citizen, filed the first request for court intervention in April of 1986 with a Petition for Special Relief. The Petition was filed in response to actions taken by Father, an American citizen, who without notice to mother, took the children from their home in West Germany where the parties resided to his parents' home in Pottstown, Pennsylvania. In response to the Petition, the court ordered Father to turn the children over to Mother pending a custody determination. The court also ordered that the parties' and the children's passports be held in escrow by opposing counsel so as to prevent the "snatching" of the children by either parent. The parties agreed that Pennsylvania would have jurisdiction and a partial custody hearing was held in May of 1986. No further hearings were conducted because the parties entered an agreement on August 5, 1986 whereby Mother was to have primary physical custody and Father was to have partial custody. At this time both parents were living in Virginia. While their divorce was proceeding in Pennsylvania in late 1987, the parties also agreed to a provision regarding custody, numbered paragraph fourteen in their Property Settlement Agreement. It provided:

> The parties shall have joint legal custody of both of the minor children, and shall have equal input into all major parenting decisions. The parties acknowledge the existence of a custody order dated August 5, 1986, to which they shall adhere.

Father signed the agreement in December 1987 and returned to live in Pennsylvania in March 1988. Mother signed the agreement that May. A divorce was entered in Pennsylvania on July 25th incorporating the Property Set-

tlement Agreement as an Order of Court. The next day Father filed a Petition to Modify Custody seeking to alter his weekend and holiday visitations in view of his move to Pennsylvania and the distance between the parties. Father's petition was scheduled to be heard in September, but before the hearing Father filed an Emergency Petition on August 24, 1988 which averred that during Father's current visitation with the children he learned that Mother "is selling her property and is in the process of moving to West Germany, and ultimately to Australia with the minor children." He also alleged that Mother had procured new passports for herself and the children. The court acted quickly in response to this Emergency Petition and entered a temporary order awarding Father primary physical custody and enjoining Mother from removing the children from the United States. Three days later, on August 29, 1988 the court held a hearing after which it returned custody to Mother under the provisions of the August 1986 agreement. The court also required the parties to give fourteen days notice before removing the children from the United States. A decision on the issue of jurisdiction, raised by Mother, was deferred by the court to allow counsel to file memoranda of law.

Since Father's Petition to Modify custody regarding the extended weekend and holiday time remained outstanding, the court scheduled yet another hearing to resolve the matter. At this November 28, 1988 hearing the court denied Mother's jurisdictional objections and permitted Father to testify concerning a new request for emergency relief. He stated that Mother informed him on November 22, that she planned to leave with the children for Australia to visit her dying father on November 30, 1988, which violated the 14 day notice requirement. He further testified that on Sunday the 27th "there was no furniture at all in the living room and everything was boxed up, that Mother sold the car she was driving, and that she had given up her apartment at the end of the month." Mother was not present at the hearing in Pennsylvania because, according

to her attorney who was present, they were not aware of this new development in the case prior to the hearing. At the close of the hearing Judge Lawrence ordered that the children be immediately turned over to the temporary custody of their father. Father presented this signed order to Mother at her home in Virginia but did not register it with the Virginia courts. On the advice of counsel Mother ignored the order and flew with the children to Los Angeles on the first leg of her intended trip. Father meanwhile registered the order in Virginia. As a result of this registered order Mother was removed from the airplane in Los Angles and the children were taken into custody of the authorities to be later turned over to their father.

On December 13, 1988 Father filed yet another Petition to Modify Custody. Six days of hearings were held in late January and early February at the close of which the court issued a temporary order transferring physical custody back to Mother. Prior to the Opinion and Final Order being issued, Father filed an Amended Petition for Hearing based upon after discovered evidence. Another three days of testimony was heard by the court and on August 1, 1989 the court entered an order granting both parents joint legal custody with each to have equal input into all major parenting decisions. Mother was to retain primary physical custody and Father was granted certain times of partial physical custody during weekends, holidays and the entire summer. During Father's period of physical custody during the summer, Mother was to have partial custody for two uninterrupted weeks. The order also added restrictions on travel *outside the country*. It provided that Mother give Father forty-five (45) days written notice when planning on taking the girls out of the United States. In the case of an emergency or Father's written objection to the planned trip the court made further provisions.

Accompanying the court's order was an exhaustive, well reasoned 57 page opinion. Therein the court cast doubt on Father's credibility citing examples which included the fact that Father informed the court that Mother sold her car,

intentionally giving the court the impression that Mother was disposing of this property in preparation for a permanent stay in Australia. (In fact Mother had more than one car and Father was informed months before that she intended to sell the BMW which she was receiving as part of the property settlement.) While the court was sympathetic to Father's concerns and fears that Mother may move with their daughters to Australia, the court remarked that if Mother should violate the notice requirements of its order and abscond with the children, "she may well forfeit primary custody of them forever."

Litigation regarding custody ceased for approximately one year until August of 1990. On the 16th of that month Father filed another Petition for Emergency Relief wherein he alleged that he delivered the children to Mother for a two week uninterrupted summer vacation and was scheduled to pick them up on August 10 for the remainder of the summer. However on August 8, Father learned that Mother had terminated her lease and vacated her premises. Appellant alleged that he "still has not heard anything from [Mother] and ha[d] no idea as to the whereabouts of his children." Referring to the opinion issued by Judge Lawrence, Father stated in his petition that Mother was advised that should she violate the notice requirements of the court's order she may forfeit custody forever.

In response to this Petition the Honorable Albert R. Subers issued an order dated August 20 directing that the children be immediately turned over to the custody of law enforcement officials and/or Father and granted Father temporary primary physical custody. A hearing on the Petition for Emergency Relief was set for September 5, 1990. The children were promptly turned over to Father by officials in Colorado after the order was executed. However, at the hearing scheduled on September 5th, which was attended by both parents, husband acknowledged that he first learned of the whereabouts of Mother and children on Friday, August 17, three days before the court entered its emergency order. Father testified that Mother telephoned

him to inform him that she and the children had moved to Colorado and bought a home. The next day, Saturday, father received a letter informing him of the move, the new address and the following suggestions regarding custody:

> Concerning visitation with the girls, your monthly weekend with them will of course no longer be possible but holidays and summer vacation shouldn't be a problem. I'm sure we can work something out. I'm willing to share some of the travel expenses if necessary. As you have only taken them for 2 weeks so far this summer you will have to let me know soon if you want to see them again before school starts. School starts here in 3 weeks on the 4th of September.

Upon hearing this testimony Judge Subers indicated that he believed he had been "mislead" concerning the unknown whereabouts of the children when, in fact, Father was informed by Mother of their location before entry of the court's August 20th emergency order. While Father's counsel contested this fact, Judge Subers judged the subject to be inappropriate for an emergency petition. The following portion of the transcript is illustrative:

> THE COURT: That's not the subject of an emergency petition where you send somebody out to Colorado, take these children, and put them on an airplane and bring them back.
>
> MS. GOLD–BIKIN [COUNSEL FOR FATHER]: But Your Honor, how was he to get his children for the rest of the summer?
>
> THE COURT: He doesn't do it that way.
>
> MS. GOLD–BIKIN: Well, how would you suggest—
>
> THE COURT: He files a petition for contempt, he files something else ... N.T. 9/4/90 at 23.

The court ordered the children to be returned immediately to their mother so that she could return them to Colorado and directed Father to pay the air fare. At the hearing, Father's counsel asked the court to also order that Mother be directed to return for the custody hearing which was scheduled for October 17th. To this request the court

responded: "I'm not going to order her to return. . . . We'll see what happens on the 17th. If she doesn't show up, that's another problem, you can take it from there."

Prior to the hearing which was rescheduled until November 14th, Father filed a Petition for Contempt. Mother received notice that the hearing on both Petitions was scheduled for the 14th. Mother did not appear at the hearing. The court noted that it was in receipt of a FAX communication from Mother delivered to the court the day before. The court indicated that it did not read the FAX since opposing counsel was not sent a copy. Father's counsel was presented with a copy at the hearing and she quoted a portion of it into the record, which read: " 'I do not have the funds to pay for the trip to Pennsylvania, or for legal representation. Also, I would lose my job, if I was to leave at this time. I have purchased a house here. I have a good job. I provide very well for my family, and I cannot risk losing it all." Judge Subers also remarked on the record that the court was in receipt of a phone call from mother that morning in which she suggested the possibility of a conference call. The court refused to comply with that request and continued with the hearing, listening to the testimony of Father. Father relayed to the court the circumstances of his learning that his children had moved to Colorado and gave testimony about his current circumstance, his relationship with his children and the provisions he could make for the children. The entire hearing lasted 35 minutes. Two days later, November 16, 1990, the court issued an order finding Mother in contempt of Judge Lawrence's August 1, 1989 order, and, noting that Mother "failed to appear," the court, once again, transferred primary physical custody of these children to Father. No provisions for partial custody or visitation by Mother were contained in the order.

Mother filed a timely appeal from the order of custody and also filed an Answer to the Petition for Contempt, an Emergency Petition to Modify Visitation, which alleged that Mother had been denied visitation with her children, and a

Petition to Reconsider the November 16th custody order. After hearing arguments, the court denied Mother's petitions on December 13, 1990. Following the Concise Statement of Matters Complained of on Appeal filed by Mother, the court on January 29, 1991 issued an opinion.

The court initially acknowledged that its paramount concern was the best interest and permanent welfare of the children. It also analyzed the three prong test announced in *Gruber v. Gruber*, 400 Pa.Super. 174, 583 A.2d 434 (1990) to be considered in custody matters which involve relocation. Regarding the advantages of the move by the custodial parent and its impact on the quality of her life, the court found that "mother's reasons for the move to Colorado were solely because real estate was cheaper and she could purchase a house." The court scrutinized Mother's motives for the move, the second prong of the test, and found that "Mother was considering her best interests and not those of the children." The court further found that Mother's "motivation clearly indicates a lack of concern for the visitation rights of father." With regard to the *Gruber* court's recommendation that a court consider a visitation schedule which will foster an on going relationship between the children and the non-custodial parent, the court remarked: "Mother has shown that she cannot and will not comply with present visitation arrangements nor can it be said that she would cooperate with any alternate visitation arrangements. Mother simply announces by letter marked P-2 that father's visitation will no longer be possible." The court went on to comment that Father "has shown his sincere desire to continue and deepen his relationship with his children" and "has demonstrated his ability to assume the role of primary caretaker during his times of partial physical custody." Based upon these conclusions, the court justified its November 1990 decision awarding Father primary physical custody. The court acknowledged that it failed to award Mother any partial custody or visitation and, in this regard, it stated:

We readily recognize that we did not set forth any visitation schedule. We had no input from Mother who chose not to appear at the Hearing to determine custody. We readily recognize that such a schedule should be established and we will do so upon remand from the Superior Court and after a hearing which will give this Court the desires of Mother which we can then balance against the best interests of the children.

■ The trial court was correct in acknowledging that the ultimate objective in resolving this matter remains the best interest of the children. Because these interests are allied with the custodial parent's quality of life, the court also appropriately examined the factors set forth in the *Gruber* decision in an effort to achieve this stated objective. *See Lee v. Fontine,* 406 Pa.Super. 487, 594 A.2d 724 (1991). The trial court erred, however, in concluding that it could determine the children's best interest on the record before it.

As stated, in August of 1989 Judge Lawrence entered an order granting Mother primary physical custody after consideration of nine days of testimony and as thoroughly explained in her 57 page opinion. This custody determination arose necessarily due to an Emergency Petition filed by Father. Judge Lawrence considered Father's testimony regarding this petition, and upon which the court initially acted to award him temporary custody, not to be entirely forthright. The custody determination currently upon review again followed an emergency petition filed by Father. On the basis of this Petition Judge Subers granted Father temporary physical custody. At the hearing which followed, Judge Subers returned custody to mother after concluding that Father had "misled" the court by obtaining the emergency order on the basis that the whereabouts of Mother and the children were unknown, when in fact Father learned of their location prior to entry of the order. Despite these facts and an exhaustive inquiry one year earlier to determine which parent would best serve these children by being their primary caretaker, the court again disturbed

the custody of these two children on the basis of Father's testimony in a 35 minute hearing.

Father notes in his Brief on appeal, as he did before Judge Subers, that Judge Lawrence in her opinion stated that "Mother could forfeit custody if she absconded with the children." Father again neglects to add all the relevant facts. Judge Lawrence's comments related directly to Father's fear that Mother would leave the country with the children and do not apply to the situation which occurred here.

█ In the instant matter Mother left her present home with the children and relocated to another state. Mother's relocation of the children away from their surroundings and schools was, without question, in violation of Judge Lawrence's custody order because she undertook such action without consulting Father. Further, according to Judge Lawrence's order, Father was to have custody during the summer. Mother violated this provision by wrongly extending her two weeks of temporary summer custody as a result of the move. It was not necessary for Father to have made arrangements for the remainder of the summer if he wished to have the children, as Mother suggests. It was Mother's obligation to return the children to Father's custody. The fact that Mother violated the custody order issued by Judge Lawrence is, as noted by the trial court, an appropriate foundation for a finding of contempt, however, it cannot be the basis for an award of custody. *Rosenberg v. Rosenberg*, 350 Pa.Super. 268, 504 A.2d 350 (1986). "A change of custody is just as important to the child and to others as an original award of custody, and the parties should be afforded the same type of hearing on the subsequent application as they are entitled to on an original award." *Id.*, 350 Pa.Superior Ct. at 274, 504 A.2d at 353. We do not mean to suggest by this comment that the trial court awarded custody to Father automatically based upon Mother's violation of the previous custody order. The court noted Mother's violations and went on in an attempt to examine the reasons for the move and it's effect on the

relationship between the children and Father. However, in our view, a thorough examination as is necessary was rendered impossible absent Mother's testimony.

It cannot be disputed that Mother had notice of the hearing in this matter, yet did not attend. However, Mother did not show blatant disrespect for the court and its system. Mother notified the court of her inability to attend prior to the hearing. She informally requested a continuance and a "conference call" to resolve the matter, which the court rejected. Further, the court itself impliedly sanctioned Mother's non-attendance when at the previous hearing on the Emergency Petition, which Mother attended, Father's counsel requested the court to order Mother to appear at the custody hearing and the court responded that it would not order her to return.

In *Fatemi v. Fatemi*, 371 Pa.Super. 101, 537 A.2d 840 (1988), this court affirmed a decision which changed court ordered legal custody to the mother after conducting a hearing at which the father failed to appear. Unlike the instant case, in *Fatemi*, the father neglected to attend the hearing because he had fled the jurisdiction with the children for his native country, Iran. The father in *Fatemi* made no effort to attend the hearing or inform the court of his absence other than to have his counsel appear and notify the court that he had fled. This court found adequate support for the trial court's conclusions that the father's action indicated a "total disregard for the welfare of the children," "a personal and selfish motive" and "a desire to have the children deprived of the care, comfort, love and affection of their mother." *Id.*, 371 Pa.Superior Ct. at 116–117, 537 A.2d at 847.

These same conclusions cannot be made in this case. Here the trial court found that Mother was considering her own best interest for the move, and not the children. It also scrutinized her motives for moving and concluded that "Mother has shown that she cannot and will not comply with present visitation arrangements, nor can it be said that she would cooperate with any alternate visitation arrangements." Judgment on Mother's motives for her move and

her desire to alter Father's visitation arrangement with the children was made, as in *Fatemi,* without the presence of the party who was outside the jurisdiction. However, here Mother did not flee the country, she simply moved. Her move itself did not violate the previous custody arrangement, it was the manner in which the move was accomplished, without notice to Father who was to have equal input into all major parenting decisions, which was violative of the previous order. As pointed out, Mother informed the court that she would be unable to attend the hearing, she informally requested a continuance and she was left with the impression at the previous hearing that her presence at the latter hearing would not be ordered. Further, contrary to the court's characterization of Mother's motives based upon the letter Father submitted into evidence, Mother did not simply "announce" that Father's visitations would no longer be possible. By letter Mother advised Father that the current arrangement would no longer be possible, however, she also suggested alternatives and offered to share travel expenses. We cannot view this communication as an indication that Mother's move was motivated by a desire to restrict Father's relationship with his daughters. Speculation in a matter critical as this is clearly inappropriate.

■■■ We conclude based upon the record presented before the court in this matter that the trial court's findings regarding Mother's motives for her move with the children were made without an adequate basis, and on the facts of this case, a change of custody based on such findings was not in the children's best interest. The lives of these children have been repeatedly disrupted by the parties and the courts.[1] This disruption should not continue based upon

1. Each party would like to blame the other and the court system for the disruption involved here. Each has invited this disruption. Mother has failed to acknowledge Father's role as joint legal custodian of the children and has failed to comply with court orders requiring timely notification of trips. Mother moved the children without prior notice to Father causing him great concern when their whereabouts were unknown to him. Mother has shown disregard for the court order acknowledging that Father was an equal partner in their daughter's lives. Father, likewise, has prompted the children to be moved

continuously filed motions to modify custody which do not contain the entire facts of the case and history of the parties. In this situation where the custodial parent's absence from the hearing can be justified, it was an abuse of discretion for the court to again take these children away from their primary caretaker, who was granted custody after an extensive hearing only a year earlier before another judge who issued an exhaustive opinion, based solely upon the testimony of the petitioning parent. It is important for these children that they have "a stable relationship with an established parental figure and a known physical environment." *Gerber v. Gerber*, 337 Pa.Super. 580, 586, 487 A.2d 413, 416 (1985). For a court to have again disrupted their lives based upon the record before us, could not have been in their best interest.

■ The lack of concern for these children is compounded by the fact that that custody order makes no provisions for temporary custody or even visitation by Mother. It was acknowledged in Judge Lawrence's opinion that Mother has been the childrens' primary caretaker since their birth. To abruptly transfer their custody to Father without any provisions for them to continue a meaningful relationship with Mother is insensitive to their well being. The trial court's comments that it would establish a visitation schedule upon remand from this court since it was without Mother's input, was clearly unresponsive to the children's immediate need to maintain some semblance of stability in their lives.

■ We have determined that the trial court in this case, which was not the court which made the original award of custody, issued its order directing a change in custody without the benefit of a full hearing on the matter. For these reasons it is in the children's best interest to conduct

from parent to parent. He has filed numerous Emergency Petitions from which he was awarded custody only later to be reversed when the full facts were divulged. If these children are to grow up with any type of stable environment, both parties must work together providing the children with access to both parents and abide by the court's decision in the matter.

a custody hearing anew.[2] This hearing should provide the judge with information regarding the past history of the parties, their present circumstances, their abilities to care for their children as their primary caretaker and the children's desires, if any are made known. At such hearing Mother may explain before the court her reasons for the move and the benefit that it would offer to her and her daughters. The court upon considering this information along with the entire previous history of the parties and the court's previous recommendation and evaluation of both parents and their abilities to care for the children, must determine in which parent's care the children's best interest remains. If the court determines that it would not be in the girls' best interest to move with Mother to Colorado but that Mother's actions were not any indication that she could not resume her custodial responsibilities, the court should consider whether Mother should be given the opportunity to reconsider her move.

Pending the outcome of this hearing, which in an effort to resolve this matter quickly, we order to be held within 30 days, the children are to remain in their Father's custody. Further disruption for this short period of time and in the middle of the school year we deem unwise. Immediately upon remand from this court and pending the custody hearing, the trial court is to enter an order scheduling Mother substantial unsupervised visitation or partial custody. We find nothing in the record to justify the absence of such an order.

Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

---

2. Where at all possible, it is best for all concerned to have modification of custody petitions heard by the same judge who heard the previous matters and is most familiar with the case. This is particularly important in a case such as this which has a complicated legal history.