**John CLAPPER, Appellee,**

v.

**Sharon Gordon HARVEY, Appellant.**

Superior Court of Pennsylvania.

Argued June 23, 1998.

Filed July 30, 1998.

---

Charles M. Watkins, Reading, for appellant.

Charles J. Aliano, Montrose, for appellee.

Before POPOVICH, ORIE MELVIN and SCHILLER, JJ.

POPOVICH, Judge:

This is an appeal from the order of the Court of Common Pleas of Susquehanna County which denied Mother's petition for modification of custody. Herein, Mother raises one question for our review: Whether the lower court erred by failing to apply the proper standards in deciding custody by a non-custodial parent seeking relocation. Upon review we vacate and remand.

Mother and Father began living together in Pennsylvania in 1988, but never married. A son, Harley David Clapper (Harley), was born to the couple on February 14, 1991. Mother, Father and their son lived together until May of 1992, when the couple separated and agreed that Harley would live with Mother in Susquehanna County. Mother and Harley lived there with Father's sister, Tracy Clapper, until December 1992, when they moved to Hudson, Florida, where Mother's parents lived. On January 29, 1993, Father filed a petition for custody in the Court of Common Pleas of Susquehanna County. On February 16, 1993, Father filed a petition for writ of habeas corpus in the Sixth Judicial Circuit Court in Pasco County, Florida. On March 1, 1993, Mother filed a petition to award child custody, in the same court in Pasco County, Florida. On March 12, 1993, the Pasco County Court granted the writ of habeas corpus, determined that Penn-

sylvania had jurisdiction over the case, and ordered Mother to deliver the child to Father on April 27, 1993, unless the Pennsylvania court decided otherwise.

In early May of 1993, temporary physical custody was granted to Father in the Court of Common Pleas of Susquehanna County. On May 28, 1993, after hearings were held, the court entered an order giving physical custody to Mother within the Commonwealth of Pennsylvania or within forty-five miles of Susquehanna County. Shortly thereafter, Mother returned to Florida with the child with full knowledge that the custody order required her to remain in Pennsylvania or within forty-five miles of Susquehanna County. On June 25, 1993, Father filed a motion to have Mother held in contempt and to have physical custody of the child transferred to Father. After an ex parte hearing held on July 9, 1993, the court found Mother to be in contempt of its order of May 28, 1993, and transferred physical custody of Harley to Father. Further, the court limited Mother to visitation under the supervision of Father or Father's mother. The court permitted Mother to purge herself of the contempt by returning to Pennsylvania with Harley and complying with the order of May 28, 1993. Rather than comply with the court order, Mother, ten months later, in April of 1994, turned over Harley to Father in Pennsylvania where he continues to reside. From that time to the present, Mother traveled from Florida to Pennsylvania on several occasions to visit Harley. On May 26, 1996, Mother filed a petition for modification of custody. Hearings were held on Mother's petition on August 28, 1996, and November 25, 1996. On November 26, 1996, the court filed an opinion and order denying Mother's petition. This appeal followed.

 Turning to Mother's claim, we quote our Supreme Court:

> As we have stated repeatedly, the paramount concern in child custody proceedings is the best interest of the child. This court has held that custody can be changed without proof of substantial change in circumstances when it is shown that the change is in the best interest of the child. (citations omitted).

*Moore v. Moore*, 535 Pa. 18, 30, 634 A.2d 163, 169 (1993). It is settled law in Pennsylvania that a custody order is subject to modification without proof of substantial change in circumstances when it is shown that change is in the best interests of the child. *Id.* Whenever a court is called upon to address the best interests of a child, traditional burdens or presumptions such as substantial change in circumstances, the fitness of one parent over another, or the tender years doctrine must all give way to the paramount concern; the best interests of the child. *Id.* In determining best interests of the child, a court must consider all factors that legitimately affect the child's physical, intellectual, moral and spiritual well-being. *Swope v. Swope*, 455 Pa.Super. 587, 689 A.2d 264 (1997).

Also well-settled is the proper standard of review for an appellate court in a custody case. As our Supreme Court said:

> The scope of review of an appellate court reviewing a child custody order is of the broadest type; the appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion. (citations omitted).

*McMillen v. McMillen*, 529 Pa. 198, 202, 602 A.2d 845, 847 (1992). Our Supreme Court noted that its reference to "scope of review" in *McMillen* was incorrect as it clearly was defining "standard of review." *Moore*, 634 A.2d at 168 n. 4. They also noted that *McMillen*'s reference to "gross abuse of discretion" was in fact no different than "abuse of discretion." *Id.* Under this broad abuse of discretion standard, we review the trial

court's denial of Mother's petition for modification of custody.

Mother contends that a proper "best interests of the child" analysis in a case where the petitioning parent seeks to relocate the child to another jurisdiction includes consideration of the factors outlined in *Gruber v. Gruber*, 400 Pa.Super. 174, 583 A.2d 434 (1990). These factors are the following:

> First, the court must assess the potential advantages of the proposed move and the likelihood that the move would substantially improve the quality of life for the custodial parent and the children and is not the result of a momentary whim on the part of the custodial parent ... Next, the court must establish the integrity of the motives of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it ... Finally, the court must consider the availability of realistic, substitute visitation arrangements which will adequately foster an ongoing relationship between the child and the non-custodial parent.

*Id.* at 184, 583 A.2d at 439. Father correctly points to the fact that the *Gruber* factors have only been explicitly applied in cases where the "custodial" parent wishes to relocate with the child, and not where the non-custodial parent seeks custody of the child and requests the child's relocation to a different state. However, for reasons explained below, we believe these *Gruber* factors should be considered in appropriate cases, as part of the overall best interests analysis, when a parent wishes to relocate a child to another jurisdiction.

■ As we stated in *Lambert v. Lambert*, 409 Pa.Super. 552, 560–62, 598 A.2d 561, 565 (1991), even in custody cases involving the relocation of one or both parents, the ultimate objective in resolving the custody matter remains the best interests of the child. The determination of a child's best interests involves the consideration of *all* relevant factors that legitimately affect the child's physical, intellectual, moral and spiritual well-being. *Swope*, 455 Pa.Super. at 589–91, 689 A.2d at 265. It follows then that the factors outlined in *Gruber*, if deemed relevant and likely to affect the child's physi-

cal, intellectual, moral and spiritual well-being, should also be applied and considered in any custody case involving the relocation of either the custodial or non-custodial parent. Because the factors outlined in *Gruber* are relevant and likely to impact Harley, they should have been considered by the trial court in determining Harley's best interests.

■ Turning to the trial court's opinion of November 26, 1996, denying Mother's petition for modification of custody, we find that the lower court did not properly consider all the relevant factors in child custody determinations which involve the relocation of a child to a different state. As we noted above, the paramount concern in child custody proceedings is the best interests of the child. *Moore*, 535 Pa. at 29–31, 634 A.2d at 169. The trial court does not refer to "the best interests of the child" at any point in its opinion nor cite any relevant case law to suggest that it undertook a proper analysis. The trial court limits its analysis primarily to the current environment in which Harley lives with Father. For example, the court states, "We are of the opinion that Harley Clapper has a good stable environment in which to be raised with his Father and grandmother." Trial opinion, p. 2. It only briefly indicates that it even considered the possibility of Harley living with the Mother when it stated, "We are further of the opinion that Sharon Harvey would not promote the reasonable visitation between the Father and son...." *Id.* at 3. Again, as the Court said in *Moore*, a petitioning parent is not required to show that the other parent is unfit in order to modify a custody order. *Moore*, 535 Pa. at 29–31, 634 A.2d at 169. Mother need only show that modifying the custody order would be in the best interests of the child. In order for a court to determine the best interests of a child, it must not limit its analysis to the present environment in which the child is situated. Rather, the court must consider all possible environments and relevant factors.

In the case **sub judice**, the trial court gave no indication that it looked beyond the present environment in which Harley was situated. It made no mention of the following nor other relevant factors: Harley's opportunity

to be raised with his half-sister, the ability of each parent to remain at home while Harley, too, was home, the location of extended family members and the financial stability of each parent.

Although the trial court does indicate that it considered the third of the *Gruber* factors when it opined that Mother would not promote the reasonable visitation between Father and Harley, it did not mention the other *Gruber* factors. Instead the trial court appears to rely heavily, if not solely, on Mother's disobedience of the earlier court order as its primary reason for granting Father physical custody of Harley. However appropriate it is to consider this factor, it is only one factor of many to be considered when making a best interests of the child determination. Further, as we have held, a mother's violation of a custody order may be an appropriate foundation for a finding of contempt, but it cannot be the basis for an award of custody. *See Lambert*, 409 Pa.Super. at 562–64, 598 A.2d at 566 (stating that where a mother had violated a custody order by relocating to another state with her children, that fact alone could not be the basis for an award of custody to the Father).

Due to the absence of mention of other relevant factors by the lower court, we are forced to assume they have not been considered as it is the trial court's duty in a child custody matter to file a comprehensive opinion containing its findings and conclusions regarding all pertinent facts. *Alfred v. Braxton*, 442 Pa.Super. 381, 659 A.2d 1040 (1995). Effective appellate review of child custody cases requires a complete and comprehensive trial court opinion containing exhaustive analysis of the record and specific reasons for the court's ultimate decision. *Id.* In its failure to do this, the trial court failed to set forth the proper best interests of the child analysis which includes a consideration of many factors not addressed by this court, including those contained in *Gruber*. Finally, as we have held in the past, " '[a] change of custody is just as important to the child and to others as an original award of custody, and the parties should be afforded the same type of hearing on the subsequent application as they are entitled to on an original award.' " *Rosenberg v. Rosenberg*, 350 Pa.Super. 268, 274, 504 A.2d 350, 353 (1986), quoting 24 Am.Jur.2d *Divorce and Separation* § 1008 (1983). As such, appellant is entitled to a custody hearing in which Harley's best interests are considered and determined.

In sum, we find that the lower court failed to undergo the proper complete best interests of the child analysis in the present custody case. Therefore, we remand for further analysis in accordance with our decision.

Order vacated. Case remanded. Jurisdiction relinquished.