823 A.2d 987 (2003)
B.K., Appellee,
v.
J.K., Appellant.
Superior Court of Pennsylvania.
Argued January 14, 2003.
Filed May 5, 2003.
*988 Mary C. Welby, Scranton, for appellant.
William J. Miele, Williamsport, for appellee.
BEFORE: STEVENS, GRACI, and OLSZEWSKI, JJ.
OPINION BY STEVENS, J.:
¶ 1 This is an appeal from the March 5, 2002 order entered in the Court of Common Pleas of Lycoming County (1) granting Appellee/Father's Petition for Modification of Custody allowing Appellee/Father to relocate his primary place of residence and retain primary physical custody of two children; (2) denying Appellant/Mother's Petition for Emergency Relief to prevent relocation; and (3) denying, without prejudice, Appellant/Mother's Petition for Modification of Custody. On appeal, Mother contends that the trial court did not consider all relevant factors to determine the best interests of the *989 children, thereby abusing its discretion. We affirm.
¶ 2 The relevant facts and procedural history are as follows: Father and Mother were married on May 30, 1985. They have three biological children, B.K., Jr. (9/28/85), J.K. (12/29/89), and J.K. (6/30/91). Father also adopted Mother's other biological children, A.S. (4/17/79), and R.K. (12/3/82). Father and Mother separated in May of 1996. On December 3, 1997, the court issued an order that granted primary physical custody of the three biological minor children to Father and gave Mother partial custody privileges on alternate weekends, alternate Wednesdays, and specified holidays. The court ordered that legal custody be shared between Father and Mother.[1]
¶ 3 On January 29, 2002, Father filed a Petition for Modification of Custody, alleging that changes in circumstances mandated the modification.[2] Father claimed that he had secured new employment in Pittsburgh, Allegheny County, which necessitated the relocation, and that the best interests and paramount welfare of the two minor children would be served by granting his requested relief.[3]
¶ 4 On February 4, 2002, Mother filed a Petition for Emergency Relief arguing that a move to Pittsburgh was not in the best interests of the children and requested an evidentiary hearing on the matter. Thereafter, a custody conference officer scheduled a Plowman hearing for February 15, 2002.[4]
¶ 5 Additionally, on February 12, 2002, Mother filed a Petition to Modify Custody, again arguing that a move to Pittsburgh was not in the best interests of the children, specifically claiming that Father's life was "in flux" while her life was "stable."
¶ 6 An evidentiary hearing was held on February 15, 2002 and continued on February 20, 2002 during which evidence was introduced in order to resolve Father's Petition for Modification of Custody and Mother's Petition for Emergency Relief. By way of an order dated February 15, 2002, the trial court clarified the purpose of the evidentiary hearing as follows:
This Order is entered to clarify the purpose of the evidentiary hearing held this date. Before the Court is the Petition for Modification of Custody filed by the Father as Plaintiff on January 29, 2002, and the Petition for Emergency Relief filed by the Mother as Defendant on February 4, 2002, both of which relate to the issues concerning the Father changing his place of residence to the Pittsburgh area. In addition before the Court is the Mother's Petition for Modification of an existing custody order filed February 12, 2002. The Court intends to proceed at this time with receiving of testimony that will be applied to all of *990 the petitions presently pending before the Court. The Court has noted to counsel that it is anticipated that we will not receive by way of evidence today all of the testimony necessary to resolve the Mother's Petition for Modification, which was filed February 12, 2002; but it is hoped that we receive enough testimony today to resolve the issues raised by the other two petitions.
¶ 7 Following the evidentiary hearing, at which both parties and various other witnesses testified, and after in-camera interviews with the two minor children by the trial judge, the court entered an order on March 5, 2002, which granted Father's Petition to Modify Custody and allowed Father to relocate to Pittsburgh and retain primary physical custody of the two minor children, and denied Mother's Petition for Emergency Relief to prevent the move. Mother's Petition to Modify Custody was denied without prejudice. This timely appeal by Mother followed.
¶ 8 Mother raises intertwined issues for our review. She contends that the trial court abused its discretion in failing to perform a comprehensive and searching inquiry into the best interests of the children in reaching its decision permitting Father to move to Pittsburgh, and in denying Mother's request for primary custody. In this regard, Mother specifically contends that the trial court abused its discretion in refusing to allow three of her witnesses to testify, including the parties' sixteen-year-old son, adult daughter, and a psychologist proffered by Mother.
¶ 9 As with all custody cases, our review of this matter is plenary. Maurer v. Maurer, 758 A.2d 711 (Pa.Super.2000). Our standard of review in custody matters is well settled. We are "not bound by deductions and inferences drawn by the trial court from the facts found, nor are we required to accept findings which are wholly without support in the record." Id. at 713 (citation omitted). We are not authorized to "nullify the fact-finding function of the trial court in order to substitute our judgment for that of the trial court." Id. "Rather, we are bound by findings supported by the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." Id.
¶ 10 We note that the trial court characterized this case as a relocation case controlled by the factors set forth in Gruber v. Gruber, 400 Pa.Super. 174, 583 A.2d 434 (1990). There, the Court set forth the following factors for a trial court to consider when faced with the decision whether to permit a custodial parent to relocate at a geographical distance from the non-custodial parent:
1. The potential advantages of the proposed move, economic or otherwise, and the likelihood the move would improve substantially the quality of life for the custodial parent and the children and is not the result of a momentary whim on the part of the custodial parent;
2. The integrity of the motives of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it; and
3. The availability of realistic, substitute visitation arrangements which will foster adequately an ongoing relationship between the child and the non-custodial parent.
Gruber, 583 A.2d at 438-39 (Pa.Super.1990).
¶ 11 In Gruber, a custodial parent sought to relocate herself and her children from Pennsylvania to Illinois. Here, Father's proposed relocation involves a move within the jurisdiction of the courts of this *991 Commonwealth and therein lies a distinction between the instant circumstances and the specific circumstances addressed by Gruber.[5] We have examined Gruber and its progeny and have determined that a Gruber analysis is triggered in this case. See Perrott v. Perrott, 713 A.2d 666 (Pa.Super.1998) (Gruber analysis appropriate in evaluating move from Pittsburgh to Wayne, Delaware County-King of Prussia Area); Beers v. Beers, 710 A.2d 1206 (Pa.Super.1998) (plurality) (logic employed by the Gruber Court involving geographical distance applied equally to relocations within the state).[6]
¶ 12 While the Gruber factors are helpful in resolving relocation disputes, this Court has repeatedly noted that they do not create a new standard and that "the polestar of our analysis in this case, just as it was in Gruber and a legion of prior custody cases, remains the best interests of the child." Baldwin v. Baldwin, 710 A.2d 610, 612 (Pa.Super.1998) (citations omitted). The Gruber factors must be applied "with the backdrop of the .....objective of determining the best interests of the child." Burkholder v. Burkholder, 790 A.2d 1053, 1058 (Pa.Super.2002) (citation omitted).
¶ 13 On appeal, Mother primarily focuses on the trial court's ultimate consideration after application of the Gruber factors: a determination of the best interests of the children. Gancas v. Schultz, 453 Pa.Super. 324, 683 A.2d 1207 (1996). In this regard, Mother asserts that the trial court erred by refusing to allow testimony from a psychologist and from the parties' two older children. We note, however, that implicit in Mother's argument regarding the exclusion of testimony from the two older children is an argument alleging that the trial court failed to adequately consider the second factor enunciated in Gruber involving an analysis of motives of the parent either seeking the move or seeking to prevent it. We have considered Mother's arguments, and we find no merit in them.
¶ 14 The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion *992 or committed an error of law. In Re B.L.L., 787 A.2d 1007 (Pa.Super.2001). A trial court has wide discretion in ruling on the relevancy of evidence and its rulings will not be reversed absent an abuse of discretion. Plowman v. Plowman, 409 Pa.Super. 143, 597 A.2d 701 (1991).
¶ 15 Here, Mother proposed to call a psychologist, Dr. Dan Egli, as an expert witness at the evidentiary hearing. Father objected to such testimony on relevancy grounds and the trial court requested an offer of proof. Essentially, Mother wanted Dr. Egli to testify in order to establish the factors that should be considered from a psychological viewpoint when children are relocated. Mother argues that Dr. Egli's testimony would "... assist the court in making its determination..." N.T. Evidentiary (Plowman Hearing, February 15, 2002, at 13.
¶ 16 In reaching its decision not to allow Dr. Egli to testify, the trial court considered the limited nature of the testimony Dr. Egli was prepared to offer. Since Dr. Egli had never seen or evaluated the two children at the heart of the custody dispute, he was prepared to offer only general testimony about the benefits of having children undergo psychological evaluations before being allowed to relocate. The trial court explained that the court was in a position to determine whether there were psychological factors in existence relevant to these two children that needed to be evaluated. Moreover, with respect to the necessity of having the children psychologically evaluated before relocation would be permitted, the trial court explained that an evaluation ".... is always considered and the possibility that such would be directed." N.T. Evidentiary (Plowman) Hearing, February 15, 2002, at 14.
¶ 17 Indeed, the trial court conducted extensive in-chamber interviews with the two minor children, which followed testimony from both Mother and Father and other witnesses, and relied upon evidence gathered from those interviews. The interviews no doubt provided the trial court with valuable insight into the dynamics of the parties involved in this appeal, particularly the children.
¶ 18 We believe that the trial court was in the best position to determine whether the children exhibited any psychological factors that required further assessment prior to a decision being made, and the trial court found nothing to suggest that further evaluation was necessary. Thus, the trial court reasoned that other testimony beyond that which had already been received would not have been helpful or relevant. We agree. Accordingly, the trial court's exclusion of testimony from Dr. Egli was not an abuse of discretion.[7]
¶ 19 Mother also attempted to introduce testimony from the two older children in the family, B.K., Jr. and A.S., which was excluded by the trial court. Mother's offer of proof with respect to these children was that their testimony would evidence a pattern of Father's alleged alienation and interference in their relationship with Mother. Mother alleged that this evidenced the fact that Father's desire to move to Pittsburgh was not legitimate but rather a design on his part to interrupt the relationship between Mother and her two minor children. Father objected to such testimony on relevancy grounds, and the trial court sustained Father's objections.
¶ 20 Essentially, the trial court concluded that the proposed testimony of the two older children was not relevant to the matters *993 at hand since it related to issues as to how Father may have interfered with Mother's relationship with the two older children several years earlier. The trial court noted that at no time had Mother filed a contempt proceeding against Father regarding alleged interference or alienation as such would relate to the custody arrangement between Father and Mother for the two older children. Furthermore, other than bare allegations of Father being inflexible, Mother did not allege nor offer any evidence tending to show that Father had intentionally attempted to interfere with or alienate her from the two minor children at the heart of this dispute.
¶ 21 Our review of the record finds that the trial court adequately focused on any possible hostilities that may have motivated Father to relocate to Pittsburgh. We find the following discussion engaged in by the trial court:
I do congratulate both of you for having been involved an awful lot in the lives of [J.K.] and [J.K.]. I don't understand the situation of all or nothing that has occurred in the past with [A.S.] and [B.K.,Jr.], and what all those issues were; and I have ruled contrary to Mother's strong arguments to the contrary that what they have to say at this point concerning what all went on in those matters involve a whole collateral issue.
* * *
And I say all that because what really brings us before the Court is whether it's appropriate for Father as primary physical custodian to relocate the primary physical custody place of residence to the Pittsburgh area.
And the mother's complaint for modification of the existing order filed February 12th first asserts that the move is not in the best interests of the children and then suggests in the allegations that with [B.K., Jr.'s] recent relocation, he's expressed concerns about the current arrangement and that the father's life is in the process of divorce and in a state of flux and that the mother's life is more stable.
Despite what may have related to [B.K., Jr.] and despite the offer to show that Father is somehow improperly motivating or speaking bad things about the mother to the children, I don't see that that's the real core of the issue, either in Mother's modification petition or in her filing of the emergency petition that was filed February 4, or in the father's request for modification of custody.
The real issue here is, should there be a change in primary physical custody if Dad moves to Pittsburgh? What is in the children's best interest in that regard, and my determination, not to keep you in suspense, but my determination very straight forward is that primary physical custody should not be changed and that Father should be permitted to relocate the children to Pittsburgh.
I need to make some explanation as to the reasons for that more specifically; and that is, that I think under the test first suggested in Gruber, that the father has prevailed on the evidence that there is, in all likelihood, that this move will substantially improve his quality of life and that of his family unit. He's been unemployed now for over six months; and, you know, it's common knowledge in our community as to the toughness of the job situation both here and in surrounding counties of plants closing.
I think it's fortunate for Father that he has obtained employment anywhere and, obviously, for the future well being of where that family unit needs to be. Now, there's some issues about his recent divorce and about [B.K., Jr.] moving *994 andand all those things; but there's been no showing whatsoever that Father hesitated about seeking a job or that he wasn't seeking a job or that he was sitting back and gonna be content for the rest of his life to collect unemployment or live off of whatever other gratuitous sources there might be.
* * *
There's [sic] allegations that his motives are to interrupt Mom's Wednesday visitation with the children and otherwise interfere with Mom having a relationship with them and that there's no suitable alternative available, realistic substitution of visitation or partial custody. In that regard, the mother also has to seek her opposing the move with good motive; and, obviously, she has good motive.
* * *
And, again, I congratulate you both for that, given some of the other disharmonies in the family that I see. But at the same time, I guess if her motives are this way, that she should be having more time with the children, why has she waited till now to speak up? Why has she not been when confronted with this change of job situation herself last September, you know, actively and strongly sought some alternative situation with the husband or with the father?
And I don't know if Father really knew about this Wednesday night work situation before the testimony here in court now or not. I mean, it certainly wasn't raised in argument beforehand; but maybe Father knew about it. But it doesn't appear from the testimony of the mother that you went and told Dad, Hey, look, you know, I'm not working ____ or I'm working Wednesday nights.
And that way, we've got to make some changes because I can't be with the kids. I don't understand that; and all I'm saying is, to the extent that there's questions about motive of Father and questions about motive of Mother, they're somewhat offsetting. And I'm willing to say, however, that while there's allegations about bad motives, that neither of you are acting in bad motives. Now, Dad maybe hasn't been the most cooperative or flexible, and that certainly is not a good situation; but on the other hand, I don't really know to what extent Mother's encouraged or sought that. Maybe she's been berated too much and is too much afraid. There's some evidence of that, but it doesn't mean that the father now is acting in bad motive, in the face of all the testimony as to good reasons, including family that he has in that area and the fact that his home here is being broken up. Something's got to be done.
There's just no evidence that there's any bad motive. So to me, I'm satisfied that the integrity of the motives of both in seeking the move by Father and Mother opposing the move are valid motives. The father does have a proposal for realistic substitute visitation. It's not the best. It never is, and it doesn't say that the visitation partial custody has to remain the same as it is now for him to move; but nevertheless, it's gonna remain substantially that way in the father's proposal. And so that test is met.
* * *
II think there needs to be more than history of interference with [B.K., Jr.], and/or with [A.S.] before I can compute that to a hypothetical that Father will, if he continues primary physical custody, interfere with [J.K.] and [J.K.'s] relationship. At this point, that doesn't appear to be..................
Theyexpressed no reservation at all ofof being with Mother or having anything but the greatest of love for her. So they have expressed great love for *995 their mother as well as for their father. You know, II don't see that there any evidence thatthat the father has interfered with Mother's relationship with [J.K.] and [J.K.].
N.T. Evidentiary (Plowman) Hearing, February 20, 2002, at 117-131.
¶ 22 What we deduce from the foregoing is that the trial court carefully considered Mother's proposed testimony relating to A.S. and B.K., Jr. and concluded that such testimony was too remote in time and that there was no prior finding whatsoever that Father acted inappropriately or has interfered with the children's relationship or visitation with Mother. Furthermore, the trial court noted that at no time had Mother filed a contempt proceeding against Father relevant to the custody arrangement between Father and Mother for A.S. and B.K., Jr.
¶ 23 We therefore find that the trial court adequately addressed the concerns regarding Father's motives for relocation and was on firm ground in excluding Mother's proposed testimony. The trial court's conclusions are reasonable and supported by the record. We will not disturb them on appeal.
¶ 24 Accordingly, finding no abuse of discretion in the trial court's exclusion of evidence, we affirm the order of the trial court.
¶ 25 Affirmed.
NOTES
[1] The record reveals that after the custody order relevant to B.K., Jr., J.K., and J.K. was entered on December 3, 1997, A.S. resided with Father while R.K. resided with Mother.
[2] The December 3, 1997 custody order remained in effect with no formal request for modification until the time Father filed his Petition to Modify Custody on January 29, 2002.
[3] Father's Petition for Modification of Custody referred only to two of the biological minor children, J.K., age 12, and J.K., age 10. B.K., Jr. was not referenced in the Petition.
[4] When either parent files a petition which raises the issue of whether it is in the best interests of a child to move outside of the jurisdiction, "a hearing must be held either before the move, or under exigent circumstances, within a reasonable time thereafter." Plowman v. Plowman, 409 Pa.Super. 143, 597 A.2d 701, 706 (1991).
[5] We note that the pervasive theme throughout the published decisions of this Court relying on Gruber is the desire of the custodial parent to remove the child(ren) outside of the state where the non-custodial parent resides. See, e.g., Anderson v. McVay, 743 A.2d 472 (Pa.Super.1999) (petition to relocate from Pennsylvania to North Carolina granted); Baldwin v. Baldwin, 710 A.2d 610 (Pa.Super.1998) (petition to relocate from Pennsylvania to South Carolina denied); Kaneski v. Kaneski, 413 Pa.Super. 173, 604 A.2d 1075 (1992) (petition to enjoin parties from relocating from Pennsylvania to New York denied); Lambert v. Lambert, 409 Pa.Super. 552, 598 A.2d 561 (1991) (case remanded for further proceedings regarding petition to relocate from Pennsylvania to Colorado).
[6] To the extent that it is a plurality opinion, we expressly adopt the relevant rationale set forth by the Court in Beers regarding application of the Gruber factors in an intra-state context. Our opinion today should not be interpreted as a blanket rule that Gruber is appropriate in all intra-state relocations. The determination of whether Gruber is appropriate should lie within the discretion of the trial court while being mindful of geographic distance and whether that distance is significant enough to alter the relationship between the non-custodial parent and the child(ren), as well as whether the relocation entails different educational, cultural, and religious facilities, and whether or not the same trial court would retain jurisdiction over the children. See, e.g., Zoccole v. Zoccole, 751 A.2d 248 (Pa.Super.2000) (holding that relocation within same county triggers only best interests analysis and not more rigorous analysis under Gruber).
[7] We note that Mother was afforded the opportunity to present the expert testimony of Sally Manning, an elementary school counselor. Ms. Manning offered expert testimony as to how J.K. (age 10) might be emotionally impacted by the proposed move to Pittsburgh.