## Dickey v. Isaacs

C.P. of Berks County, no. 04-03698.

*Lynne Gold-Bikin* and *Christina DeMatteo,* for plaintiff.

*Frederick Mogel* and *Jennifer Grimes,* for defendant.

KELLER, *J.,* October 19, 2005—Susan B. Dickey (plaintiff or Mother) and Jared Isaacs (defendant or Father) were married on January 4, 1997. On March 17, 1997, the parties' minor child, Elizabeth, was born. A complaint in divorce was filed on March 17, 2004. On June 3, plaintiff filed an emergency petition for relocation with this honorable court requesting permission to relocate to Ambler, Pennsylvania, with the minor child. On August 16, 2005, the Honorable Scott D. Keller en-

tered an order granting Mother's emergency petition for relocation. On September 6, 2005, an order was entered granting plaintiff's petition to relocate and giving plaintiff primary physical custody of Elizabeth. A notice of appeal of this court's decision granting plaintiff permission to relocate was filed by defendant on September 14, 2005. On September 21, 2005, defendant was ordered by this court to file a concise statement of matters complained of on appeal within 14 days, which defendant's counsel did file on September 29, 2005.

In his concise statement of matters complained of on appeal, the defendant raises the following 11 issues:

(1) Whether the court abused its discretion/committed an error of law in failing to perform a comprehensive and searching inquiry into the best interests of the child in reaching its decision permitting Mother to move to Ambler.

(2) Whether the court abused its discretion/committed an error in denying Father's request for primary custody.

(3) Whether the court abused its discretion/committed an error in failing to properly apply the *Gruber* criteria to determine whether relocation serves the child's best interests.

(4) Whether the court abused its discretion/committed an error of law in finding that there would be a substantial improvement to the quality of life of the child by the proposed move to Ambler.

(5) Whether the court abused its discretion/committed an error of law in finding there would be a substan-

tial improvement to Mother's life by allowing the move to Ambler.

(6) Whether the court abused its discretion/committed an error of law in finding that realistic substitute partial custody was available.

(7) Whether the court abused its discretion/committed an error of law in failing to consider both family units where no prior custody order awarding primary custody was in place.

(8) Whether the court abused its discretion/committed an error of law in failing to give appropriate weight to the fact that Father was Elizabeth's primary caretaker due to Mother's extensive work schedule and by allowing Mother to move with the child, the child would be raised by baby sitters and her grandfather, rather than Father.

(9) Whether the court abused its discretion/committed an error of law in failing to give appropriate weight to Elizabeth's preference to live with Father in Boyertown.

(10) Whether the court abused its discretion/committed an error of law in hearing evidence pertaining to phone calls Father made to Mother and Mother's family after Mother abducted the minor child and refused to return the child and/or inform Father of their whereabouts.

(11) Whether the court abused its discretion/committed an error of law in failing to give appropriate weight to the fact that Mother filed a petition to relocate and, in spite of the scheduled hearing and without the court's or Father's knowledge or permission, took it upon herself to abduct the child and relocate to Ambler. (Defendant's

concise statement of matters complained of on appeal, 09/29/05.)

Defendant's issue no. 1 in his concise statement alleges that this court erred in failing to perform a comprehensive and searching inquiry into the best interests of the child in reaching its decision to permit plaintiff to relocate to Ambler. This court disagrees. The paramount concern in a child custody case is the best interests of the child, based on a consideration of all factors that legitimately affect the child's physical, intellectual, moral and spiritual well-being. *E.A.L. v. L.J.W.,* 443 Pa. Super. 573, 580, 662 A.2d 1109, 1112 (1995). "The court in a custody action has the obligation to consider all relevant factors that could affect the child's well-being." *Id.* In the case at hand, this court carefully reviewed and weighed the benefits to Elizabeth that would result from permitting plaintiff to move to Ambler against the benefits that would result from Elizabeth staying in Boyertown with defendant. Further, this court reviewed the extensive set of evaluations done by Mildred H. Gordon Ph.D. and L. A. Rotenberg M.D., F.A.P.A., as well as their recommendations. These evaluations touched on several areas that would ultimately affect Elizabeth's well-being, including the parties' fitness as parents, their mental soundness, job stability, and their abilities to both separate themselves from and nurture the child. After carefully considering all of the relevant factors, this court found that, because of the abundance of opportunities for Elizabeth in Ambler, it would be in her best interest to permit plaintiff to relocate.

Defendant raises, in issue no. 2, the question of whether this court committed an error of law and/or abused its

discretion in denying Father's request for primary custody. Similarly, issue no. 7 concerns this court's award of primary custody to Mother, and raises the question of whether this court committed an error of law/abused its discretion in failing to consider both family units where no prior custody order awarding primary custody was in place. Again, a determination of which parent should be awarded custody in a divorce action centers around what is in the best interest of the child. *Id.* Neither parent shall have a specific legal advantage when a trial court devises an initial custodial order. *Hurley v. Hurley,* 754 A.2d 1283, 1286 (Pa. Super. 2000). "Because here, there were two, not one, primary family units preceding institution of the custody award, both must be scrutinized similarly in the examination of competing custodial environments . . . ." *Id.* at 1285. (citation omitted) Defendant correctly points out that, because there was no custody award prior to plaintiff's petition to relocate, the court must consider both the family unit of Mother and Elizabeth and the family unit of Father and Elizabeth. This court did precisely that, relying heavily on the evaluations of Drs. Rotenberg and Gordon in making its determination. Evaluations were conducted of both plaintiff and defendant individually as well as with Elizabeth. After plaintiff's individual evaluation, the conclusion was "Between her and her husband, she has something of an edge in terms of the quality of her parenting, and in particular her ability to separate herself emotionally speaking from Elizabeth and to put appropriate limits on her." (N.T. petition to relocate, 08/16/05, court exhibit no. 1, p. 62.) Of defendant's individual evaluation, one of the conclusions was "While he and his wife have their 'issues,' he

is the one who has more issues, has more difficulty separating himself from Elizabeth, and putting limits on her, and this in fact is a crucial issue with regard to his parenting style." (N.T. petition to relocate, 08/16/05, court exhibit no. 1, p. 72.) This court carefully considered all of these evaluations, and took into consideration their recommendations about both plaintiff and defendant's separate family units, when making the decision that it was in the child's best interest to award primary custody to Mother.

Defendant's claims nos. 3-6 deal with this court's application of the facts of this case to the standards outlined in *Gruber v. Gruber.* "In order to decide whether a custodial parent and children shall be permitted to relocate at a geographical distance from a non-custodial parent, a trial court must consider [several] factors." *Gruber v. Gruber,* 400 Pa. Super. 174, 184, 583 A.2d 434, 439 (1990). "First, the court must assess the potential advantages of the proposed move and the likelihood that the move would substantially improve the quality of life for the custodial parent and the children and is not the result of a momentary whim on the part of the custodial parent." *Id.* "In considering the prospective advantages to the move, a court shall not limit itself solely to enhanced economic opportunities for the custodial parent but must also assess other possible benefits of relocation." *Id.* "Next, the court must establish the integrity of the motives of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it." *Id.* at 185, 583 A.2d at 439. "The court must assure itself that the move is not motivated simply by a desire to frustrate the visitation rights of the non-custodial parent or to

impede the development of a healthy, loving relationship between the child and the non-custodial parent." *Id.* "Finally, the court must consider the availability of realistic, substitute visitation agreements which will adequately foster an ongoing relationship between the child and the non-custodial parent." *Id.*

"When a custodial parent seeks to relocate at a geographical distance and the non-custodial parent challenges the move, the custodial parent has the initial burden of showing that the move is likely to significantly improve the quality of life for that parent and the children." *Id.* at 186, 583 A.2d at 440. In this case, this court carefully considered each of the *Gruber* factors in reaching its decision to grant plaintiff's petition to relocate. Plaintiff is an associate professor of nursing at Temple University, and has been for the past 25 years. She originally moved to Boyertown to support the defendant in his new job, as he was required to live in his sales territory. (N.T. petition to relocate, 07/11/05, p. 8.) Her sacrifice for defendant resulted in a commute from Boyertown to her job at Temple University in Philadelphia that was 100 miles round-trip, and could sometimes take three hours total. (N.T. petition to relocate, 07/11/05, p. 8.) The effect of her commute put her in the car a minimum of 15 hours per working week. (N.T. petition to relocate, 07/11/05, p. 26.) If permitted to relocate, plaintiff's commute to work would be drastically reduced. Plaintiff expects the 21-mile commute from Ambler to Temple University would be approximately half that of the commute between Boyertown and Temple, giving her more hours to spend with Elizabeth each day. (N.T. petition to relocate, 07/11/05, p. 27.) By permitting the move to Ambler,

plaintiff's quality of life will significantly improve. She will be closer to her place of employment, therefore spending less time in the car and more time with her daughter, and she will be away from an environment that was a constant source of tension and unhappiness.

This court carefully reviewed the other advantages of the proposed move by plaintiff. Other than spending less money on transportation expenses, plaintiff's relocation would not provide any significant economic benefit, as she would not be making any more money at her job, but the relocation would provide several other significant benefits. Most of these benefits concern Elizabeth. Mother testified and provided documentation that the Upper Dublin School District was far superior to the Boyertown School District in terms of the educational resources that would be available to Elizabeth, who has a reading disability. (N.T. petition to relocate, 07/11/05, plaintiff's exhibits 1-4, pp. 103-50.) Furthermore, in Ambler, plaintiff has an extensive network of friends and colleagues who can provide support services to both her and Elizabeth, including an abundance of tutors for Elizabeth.

Next, this court reviewed the motives behind the petition to relocate. Clearly this relocation to Ambler was motivated by the desire to improve the quality of life for both plaintiff and the minor child Elizabeth. The petition to relocate was not brought simply to frustrate the visitation rights of defendant nor was it plaintiff's intention to impede the development of a healthy, loving relationship between defendant and Elizabeth. In fact, plaintiff testified numerous times that she admired the nice things that defendant likes to do with Elizabeth on the

weekends and she would have no objections to defendant receiving an extra weekend of visitation each month if he agreed to the relocation. (N.T. petition to relocate, 07/11/05, p. 48.) Additionally, plaintiff offered one dinner per week and half of the summer months to defendant. This testimony satisfies both the second and third prong of the *Gruber* analysis, as there is only 30 miles distance from Boyertown to Ambler, and plaintiff is willing to work out a substitute visitation agreement that will continue to foster the relationship between defendant and Elizabeth. The distance between Boyertown and Ambler is not so great that a satisfactory visitation agreement could not be worked out between the parties so that each parent receives an adequate amount of time with their daughter.

Therefore, after carefully reviewing all of the *Gruber* factors above and after careful consideration of the facts of this case, this court finds that each element of the analysis was satisfied and that granting the plaintiff's petition for relocation to Ambler, Pennsylvania, was in the best interests of both the plaintiff and the minor child.

Defendant also questions, in issue no. 8, whether the court abused its discretion/committed an error of law in failing to give appropriate weight to the fact that Father was Elizabeth's primary caretaker due to Mother's extensive work schedule and, by allowing Mother to move with the child, the child would be raised by baby sitters and her grandfather, rather than Father.

"The 'primary caretaker doctrine' requires the trial court to give positive consideration to the parent who has been the primary caretaker, and is one of the many

factors for the trial court to consider when determining the best interest of a child." *Marshall v. Marshall,* 814 A.2d 1226, 1231 (Pa. Super. 2002). "When both parents are otherwise fit, one parent's role as the child's primary caretaker may be given weight as a determining factor by the court." *Wiskoski v. Wiskoski,* 427 Pa. Super. 531, 537, 629 A.2d 996, 999 (1993). However, Mother testified that she believed she, and not defendant, was the primary caretaker for Elizabeth, going beyond the normal parenting "tasks" such as clothing, feeding and bathing. Despite her successful career, Plaintiff saw to it that Elizabeth was enrolled in swimming lessons every spring and summer, took her to ballet, gymnastics, guitar and piano lessons, attended church with her, and taught at Elizabeth's church day camp for one week every August. Additionally, plaintiff made all of the evening meals for the family after work on nights she wasn't teaching, packed Elizabeth's lunches, took Elizabeth to the doctor and read to her before putting her to bed at night. (N.T. petition to relocate, 07/11/05, pp. 45-48.) By relocating to Ambler, plaintiff will have even more time to spend being Elizabeth's primary caretaker. Therefore, contrary to defendant's assertions, Elizabeth will not be raised by baby sitters and her grandfather. Although plaintiff's father did relocate to Ambler to be closer to her and Elizabeth, plaintiff has no intention of abdicating her child raising responsibilities to him. In fact, plaintiff testified that her schedule for this fall semester permits her to take Elizabeth to school every morning except for two Fridays that she has early lab sessions scheduled. Only then will the help of her father be necessary. (N.T. petition to relocate, 07/11/05, pp. 31-32, 96.)

In issue no. 9 of his concise statement, defendant argues that the court abused its discretion/committed an error of law in failing to give appropriate weight to Elizabeth's preference to live with Father in Boyertown. However, when asked about where she might want to live or who she might want to live with, Elizabeth responded, "I want to live with my mom and dad as much as I live with them now." (N.T. plaintiff's petition to relocate, 08/16/05, p. 5.) The weight to be accorded to a child's preference varies given with the age, maturity and intelligence of that child, together with the reasons given for the preference. *Swope v. Swope,* 689 A.2d 264, 266 (Pa. Super. 1997). Clearly, Elizabeth is a child who feels very conflicted over the separation and divorce of her parents, both of whom love her dearly and neither of which she wants to hurt or disappoint. Elizabeth asserted that she felt comfortable in the home in Boyertown because it was the home she had lived in all her life, but that she also felt comfortable in the apartment she shared with plaintiff in Ambler. (N.T. plaintiff's petition to relocate, 08/16/05, p. 7.) Because of the enormous amount of pressure on this child, this court feels as though any statements she may have made about wanting to live with her father had more to do with her desire to remain in the home and school with which she was familiar and comfortable, and were not the product of her expressing a preference for one parent over the other.

Issue no. 10 deals with the question of whether the court abused its discretion/committed an error of law in hearing evidence pertaining to phone calls Father made to Mother and Mother's family after Mother abducted the minor child and refused to return the child and/or

inform Father of their whereabouts. This court maintains that it did not commit an error of law in hearing evidence of these phone calls, as the proper foundation was laid for the testimony and defendant's counsel had the opportunity at the time of the hearing to object to the admission of the transcripts into evidence but did not. (See N.T. petition for relocation, 07/11/05, pp. 37-43.)

Defendant's issue no. 11 in his concise statement deals with plaintiff's relocation to Ambler with the child before a hearing could be heard on her petition to relocate. While this court acknowledges that plaintiff did not have permission to relocate to Ambler, disobedience of a court order is only one factor of many to be considered when making a best interest of the child determination. *Clapper v. Harvey,* 716 A.2d 1271, 1275 (Pa. Super. 1998). Plaintiff testified that things had so badly deteriorated in the marital home that it was not a good setting for Elizabeth to be observing. (N.T. petition to relocate, 07/11/05, p. 48.) This court feels that plaintiff had only the best intentions in moving herself and her daughter to Ambler before the hearing could be held on the issue and, while it does not condone plaintiff's behavior, it does not rise to the level of egregiousness that would cause this court to believe that a relocation was not ultimately in the child's best interest.

For all of the foregoing reasons, this court respectfully requests that this court's order granting the plaintiff's petition for relocation be affirmed and the defendant's appeal be denied.