J-A15017-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| TRO AVENUE OF THE ARTS, LP, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| THE ART INSTITUTE OF PHILADELPHIA, LLC, | |
| Appellee | Nos. 1670 EDA 2013 |

Appeal from the Judgment Entered May 6, 2013
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 2305 August Term, 2009

BEFORE: PANELLA, J., LAZARUS, J., AND JENKINS, J.

MEMORANDUM BY: JENKINS, J.                    **FILED AUGUST 22, 2014**

This is a dispute over the interpretation of a commercial lease. In 1999, TRO Avenue of the Arts, LP ("Landlord") and The Art Institute of Philadelphia, LLC ("Tenant") entered into a lease giving Tenant the right to occupy a commercial building in Center City Philadelphia for ten years with an option to renew the lease for another five years ("the Renewal Term"). Near the end of the original ten year term, Tenant timely renewed the lease, but the parties disagreed on the amount of rent that Tenant owed for the Renewal Term.

Landlord filed an action for breach of contract alleging Tenant's failure to pay the full amount of Renewal Term rent. Following lengthy pretrial proceedings and a bench trial, the trial court agreed with Tenant's rent

1

calculations and entered findings of fact and conclusions of law determining that the total amount of Renewal Term rent was $15,715,604.87. Landlord filed timely post-trial motions requesting "modification" of the court's findings of fact and conclusions of law to award Landlord additional rent -- in effect, a motion for judgment n.o.v. In the alternative, Landlord requested a new trial on the basis of two evidentiary rulings during trial. The court denied Landlord's post-trial motions, and on May 6, 2013, Landlord entered judgment[1] and filed a timely notice of appeal. Without requiring a statement of matters on appeal, the court entered an opinion incorporating its findings by reference.

After careful review, we hold that the trial court failed to award Landlord the amount of Renewal Term rent that Landlord is entitled to receive under the lease. We vacate the May 6, 2013 judgment and remand to the trial court for proper computation of Renewal Term rent.

We first analyze the pertinent provisions of the lease, then describe the procedural history of this case, and then discuss Landlord's arguments on appeal.

**Pertinent Provisions Of The Lease.** Landlord owns a commercial building at 1346 Chestnut Street in Philadelphia. On April 16, 1999, Landlord and Tenant entered into a lease giving Tenant the right to possess

---

[1] R.R. 1139; **see also** Pa.R.Civ.P. 227.4(2) (permitting any party to enter judgment when court denies post-trial relief but does not itself enter judgment or order the prothonotary to do so).

17 floors of the building for 10 years with an option to renew the lease for an additional 5 years.  Tenant, a college, utilized some floors in the building for student housing and other floors for offices.

Paragraph 5 of the lease[2] defines Tenant's rent for the first ten years of the lease ("the Original Term").  Paragraph 5(a)(ii) and (iii) require Tenant to pay $208,902.66 for year 1 of the Original Term and $217,236.00 for the second year, respectively.  Paragraph 5(a)(iv) provides that at the start of year 3, and on each anniversary for the rest of the Original Term,

> monthly Rent shall be adjusted, but not decreased, annually. Such adjustment shall result in a monthly Rent equal to the monthly Rent payable for the then-expiring twelve (12) months period, plus an amount equal to such Rent multiplied by a percentage equal to the percentage increase in the 'Consumer Price Index' (as defined below) between the applicable period commencing with the "Old Base Month" (as defined below) and ending with the "New Base Month" (as defined below). In no event, however, shall Rent ever be increased (due to an increase in the Consumer Price Index) more than 3% per annum.

Due to this annual rent adjustment, which we refer to as the "CPI escalator", rent steadily rose from year to year during the Original Term.

Paragraph 3(a) of the lease[3] permits Tenant to renew the lease for one additional term of five years ("the Renewal Term") by notifying Landlord of its decision to renew 180 days or more before the end of the Original Term.

---

[2] All references below to paragraph 5 derive from page 80 of the reproduced record (R.R. 80).

[3] All references below to paragraph 3 derive from R.R. 79.

Paragraph 3(a)(3) continues: "Except as modified by this paragraph, all provisions of the lease will be equally applicable during the Renewal Term, except that there will be no further renewal option."

Paragraph 3(a)(2) defines the amount of rent that Tenant must pay during the Renewal Term as follows:

> The **annual rent** for the Renewal Term will be **the greater of** (i) the annual rent payable for the immediately preceding period **or** (ii) an amount equal to ninety percent (90%) of the annual 'Fair Market Rent' (as defined in paragraph B below) for the Premises then being leased and occupied by Tenant as of the start of the Renewal Term.

[Emphasis added].

"Annual rent for the immediately preceding period" is rent payable during the tenth and final year of the Original Term, $3,187,563.00. We refer to this figure as "immediately preceding rent".

The second term in paragraph 3(a)(2), "fair market rent", is defined in paragraph 3(b):

> '*Fair market rent*' shall mean the amount of rent a new tenant of comparable net worth and creditworthiness would pay for comparable space in the building, or if no figures are available, then for comparable space in a similar building in a similar location in the City of Philadelphia, determined as set forth in paragraph 3(c) below. Whenever '*fair market rent*' is determined pursuant to applicable provisions of this lease, the determination shall also be made as to the extent of tenant improvement allowances, brokerage commissions, rent abatements or concessions or other benefits which would be made available to a new tenant under then market conditions, all of which benefits shall also be

4

made available to Tenant in connection with the particular lease transaction for which the '*Fair Market Rent*' is being determined; provided, however, that to the extent any such amounts are not actually paid in connection with any such transaction, or Tenant elects not to take advantage of all or any of such benefits, the '*Fair Market Rent*' *for the applicable transaction shall be reduced on an equitable basis to reflect such facts*.

[Emphasis added].

More simply stated, the calculation of fair market rent in paragraph 3(b) consists of three steps, which we refer to as "steps i-iii":

(i) Determine the amount of rent a new tenant of comparable net worth and creditworthiness would pay for comparable space at the start of the Renewal Term.

(ii) Calculate all amounts allocated for tenant improvement allowances, brokerage commissions, rent abatements, concessions or other benefits (collectively "total allowances") which would be made available to a new tenant under then market conditions.

(iii) If Tenant does not actually spend these allowances, fair market rent is reduced on an equitable basis to reflect the unspent allowances.

Paragraph 3(c) provides that if the parties cannot reach agreement themselves on "fair market rent", they must submit their dispute to an arbitration panel of three licensed real estate brokers. Each panelist must perform steps i-iii individually. The average of the two closest computations constitutes the "fair market rent" value that is used in paragraph 3(a)(2)'s "greater of" computation.

Two important points emerge from our summary of the lease. First, during the Renewal Term, annual rent is the **greater of** the immediately preceding rent of $3,187,563.00 **or** 90% of fair market rent after deduction of allowances. Therefore, annual rent during the Renewal Term cannot be less than $3,187,563.00.

Second, the CPI escalator does not apply to the Renewal Term. While the CPI escalator is an integral component of paragraph 5, the rent formula for the Original Term, it is omitted from Paragraph 3, the rent formula for the Renewal Term. Paragraph 3 simply prescribes "annual rent for the Renewal Term" without any annual escalator. This difference in language indicates that the parties intended annual rent to remain constant throughout the Renewal Term instead of increasing under a CPI escalator[4].

**Procedural History**. In early 2009, Tenant timely renewed the lease, but the parties could not agree on the amount of "fair market rent". In July 2009, the parties submitted their dispute to an arbitration panel of real estate brokers in accordance with paragraph 3(c) of the lease. The panel determined that annual fair market rent before allowances was $4,218,750.00. The panel further determined that the tenant improvement allowance for the Renewal Term was $2,250,000.00, and brokerage commissions for the Renewal Term were $843,750.00, making total

---

[4] As noted above, paragraph 3(a)(3) states that all provisions of the lease apply during the Renewal Term "except as modified by this paragraph." The absence of the CPI escalator from the Renewal Term rent formula is one such modification.

allowances of $3,093,750.00 for the Renewal Term. The panel did not decide what amount, if any, of unspent allowances that Tenant could deduct under the final clause of paragraph 3(b).

On July 28, 2009, in response to the panel's decision, Tenant announced that it would pay annual Renewal Term rent of $3,393,121.00, or $282,760.00 per month.

In August 2009, Landlord filed a civil complaint challenging the panel's determination of fair market rent. Tenant responded with a petition to confirm the panel's fair market determination. Tenant argued that the panel's determination was an arbitration award which the court should affirm under the law governing judicial review of common law arbitration proceedings.

Landlord filed two amended complaints asserting breach of contract and other claims. In May 2010, the trial court sustained Tenant's preliminary objections, held that the brokers' determination of fair market rent was binding, and dismissed the second amended complaint. Landlord appealed to this Court.

On May 9, 2011, while Landlord's appeal remained pending, Tenant unilaterally informed Landlord that it would reduce rental payments from the monthly figure of $282,760.00 that it had been paying since July 29, 2009. Tenant advised that for the next 20 months, it would pay $242,135.09 per

month, the equivalent of $2,905,620.00 annually[5]. Then, for the following 21 months (until the end of the Renewal Term), it would pay $261,921.75 per month, the equivalent of $3,143,061.00 annually[6]. Tenant based this payment schedule on the premises that (1) the paragraph 3(a)(2) comparison of immediately preceding rent vs. fair market rent takes place prior to deduction for allowances; and (2) following this comparison, Tenant had the right to deduct 100% of the paragraph 3(b) allowances determined by the arbitration panel, regardless of whether Tenant spent or did not spend them.

In an unpublished memorandum dated May 23, 2011, this Court affirmed the trial court's decision in part and reversed in part[7]. We agreed with Tenant that the arbitration panel's valuation of pre-allowance fair market rent ($4,218,750.00) was not subject to judicial review. We held, however, that Tenant's "subsequent discretionary calculations of the adjustments, concessions and improvement allowances that it made to the determination of fair market rent" were subject to judicial review[8]. We ordered a remand for the trial court to determine the amount of allowances that Tenant had the right to deduct from fair market rent[9]. We did not address, however, whether the paragraph 3(a)(2) comparison of

_____

[5] R.R. 1870-71 (letter from Tenant to Landlord).
[6] *Id*.
[7] *TRO Avenue of the Arts, LP v. The Art Institute of Philadelphia, LLC*, 1730 EDA 2010 (Pa.Super., 5/23/11)) ("*TRO I*").
[8] *Id*. at 21.
[9] *Id*.

immediately preceding rent vs. fair market rent must take place before or after the deduction of the paragraph 3(b) allowances.

In January 2012, Landlord filed a third amended complaint alleging Tenant breached the lease by paying insufficient rent[10].

In December 2012, the trial court held a bench trial to determine whether to accept Landlord's or Tenant's calculations of Renewal Term rent[11]. On April 3, 2013, the court accepted Tenant's calculations in its July 28, 2009 and May 11, 2011 letters, including Tenant's 100% deduction of the tenant improvement allowance and brokerage commission. The court determined that Tenant agreed to pay $282,760.00 per month in rent from July 2009 until May 2011, $242,135.00 per month from May 2011 until January 2013, and $261,921.75 per month for the remaining 21 months of the Renewal Term[12]. This resulted in total rent of $15,715,604.87 and annual rent of $3,143,120.97 – a smaller annual amount than the immediately preceding rent of $3,187,563.00.

**Discussion.** In this appeal, Landlord's principal argument is that the trial court erred in accepting Tenant's calculations of Renewal Term rent. Landlord divides this argument into four subparts:

> A. The Trial Court Erred In Failing To Give Effect To The Lease's Annual CPI Rent Escalation Provision And Apply It To The Renewal Term.

---

[10] R.R. 404-11.
[11] **TRO I**, p. 21.
[12] Trial Court Findings of Fact, pp. 5-8, ¶¶ 36-53.

B.    The Trial Court Erred In Failing To Give Effect To Paragraph 3(a)(2) Of The Lease And In Concluding That [Tenant] Should Pay Less Rent During Each Of The Five Years Of The Renewal Term Than It Paid In The Immediately Preceding Period.

C.    The Trial Court Erred By Failing to Give Effect to The Critical Words "On An Equitable Basis" in Paragraph 3(b) of The Lease.

D.    The Trial Court Erred In Failing To Recognize That The Superior Court Remanded The Case So That [Landlord] Could Challenge [Tenant's] Calculations Of The Actual Rent Owned Based Upon [The Arbitration Panel's] Fair Market Rent Determination Worksheets.

In effect, Landlord contends that the trial court erred in denying judgment n.o.v. to Landlord on the amount of rent Tenant owes for the Renewal Term.

Landlord also seeks a new trial on the basis of two evidentiary rulings: (1) the court improperly excluded evidence that would have showed that a 100% deduction of the tenant improvement allowance and brokerage commission was inequitable; and (2) the court improperly quashed subpoenas duces tecum issued to Tenant's experts shortly before trial.

We first address Landlord's arguments that the trial court failed to award sufficient rent to Landlord under the terms of the lease.  In an appeal from the trial court's decision to deny judgment n.o.v.,

> we must consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner. Our standard of review when considering motions for a directed verdict and judgment notwithstanding the verdict are identical. We will reverse a trial court's grant or denial of a judgment notwithstanding the verdict only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.

10

> There are two bases upon which a judgment n.o.v. can be entered: one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

***Polett v. Public Communications, Inc.***, 83 A.3d 205, 211-12 (Pa.Super.2013).

Applying this standard, we conclude that the trial court erred by failing to find that rent for year 1 of the Renewal Term is at least $3,187,563.00. Paragraph 3(a)(2) of the lease prescribes that annual rent for the Renewal Term is "***the greater of*** (i) the annual rent payable for the immediately preceding period ***or*** (ii) an amount equal to ninety percent (90%) of the annual 'Fair Market Rent' [as determined by paragraph 3(b)]." In other words, annual rent must be **the greater of** the immediately preceding rent of $3,187,563.00 **or** 90% of the fair market rent remaining after deduction of allowances. Having found that 90% of fair market rent after deduction of allowances was less than $3,187,563.00, the trial court should have ordered Tenant to pay the immediately preceding rent of $3,187,563.00 annually

11

during the Renewal Term[13]. The court's failure to enter this order requires us to remand this case for entry of judgment in the proper amount.

The trial court reached the wrong result by performing the calculations required under paragraph 3 of the lease in the wrong sequence. The trial court used paragraph 3(a)(2) as the starting point for calculating year 1 rent during the Renewal Term. The lease, however, required the trial court to use paragraph 3(a)(2) as the end point. Landlord explains this point well in its brief:

> [P]aragraph 3(a)(2) did not provide a starting point for calculating the first year annual rent but rather the end point. The Lease directed that no matter what the result of the Fair Market Rent Determination process (including any reductions 'on an equitable basis'), which determined the current Fair Market Rent, the 'annual Rent for the Renewal Term' must be at least 'the annual Rent payable for the immediately preceding period,' i.e. $3,187,563...

---

[13] Tenant claims that during discovery, Landlord admitted that the panel's decision was binding as to the amount of Renewal Term rent. One of Tenant's interrogatories asked Landlord to identify all facts that support Landlord's allegation in the third amended complaint that it "is under no obligation to accept or be bound by [Tenant's] self-serving interpretation of the flawed [panel] determinations." R.R. 1453. Landlord answered that "it is bound by the lease and the determination forms of [the panel] but not to [Tenant's] flawed interpretation of them." *Id*. We do not interpret this to mean that Landlord accepted the panel's decision as binding as to the amount of Renewal Term rent. At most, Landlord agreed that the trial court must use the panel's determination of fair market rent and maximum deductible allowances when calculating Renewal Term rent under paragraph 3(a)(2)'s "greater of" formula. Landlord's answer to interrogatories is consistent with its position throughout this case that the court is required under paragraph 3(a)(2) to declare the greater of immediately preceding rent or 90% of fair market rent after deductions as Renewal Term rent.

Paragraph 3(a)(2) required the parties to reduce the annual Fair Market Rent to 90% and compare that amount to the annual rent for the immediately preceding period to determine the annual Rent for the first year of the Renewal Term. Any reduction 'on an equitable basis' must occur prior to the comparison required by Paragraph 3(a)(2), which required [Tenant] to pay as rent for the first year of the Renewal Term, the greater of (1) 90% of the annual Fair Market Rent, after the reduction on an equitable basis. . .or (2) $3,187,563, the annual rent [Tenant] paid for the immediately preceding period.

Landlord's Opening Brief, pp. 33-35.

The trial court reached the wrong result – a finding that year 1 rent was less than $3,187,563.00 -- by using the wrong sequence of steps. Specifically, it:

1. Accepted the arbitration panel's determination of annual fair market rent before allowances ($4,218,750.00) as binding (paragraph 3(c));

2. Calculated 90% of annual fair market rent before allowances ($3,796,875.00);

3. Selected the greater of $3,796,875.00 and the immediately preceding rent of $3,187,563.00, i.e., $3,796,875.00;

4. Determined the total allowances that Tenant is permitted to deduct from $3,796,875.00;

5. Subtracted total permissible allowances from $3,796,875; and

6. Concluded that the remaining amount is year 1 rent during the Renewal Term, even though this amount was less than $3,187,563.00.

Paragraph 3 required the trial court to use a different sequence of steps. It should have:

1. Accepted the arbitration panel's determination of annual fair market rent before allowances ($4,218,750.00) as binding (paragraph 3(c));

2. Calculated 90% of annual fair market rent before allowances ($3,796,875.00) (paragraph 3(b));

3. Determined the total allowances that Tenant is permitted to deduct (paragraph 3(b));

4. Subtracted total permissible allowances from $3,796,875 ("fair market rent after allowances") (paragraph 3(b));

5. Compared fair market rent after allowances with immediately preceding rent of $3,187,563.00 (paragraph 3(a)(2)); and

6. Concluded that rent in Year 1 of the Renewal Term was the greater of these two values (paragraph 3(a)(2)).

More succinctly stated, the court should have performed the "greater of" comparison in paragraph 3(a)(2) after performing all steps in paragraph 3(b) (the calculation of 90% of fair market rent minus all permissible allowances).

Applying the correct sequence of steps, we agree with Landlord that year 1 rent during the Renewal Term is at least $3,187,563.00.

Conversely, we reject Landlord's argument that rent increases in years 2-5 under the CPI escalator. As explained on page 6 above, the CPI escalator only applied during the Original Term; it does not apply during the Renewal Term.

We also reject Landlord's argument that 90% of fair market rent after deduction of allowances exceeds the immediately preceding rent of $3,187,563.00. The trial court permitted Tenant to deduct 100% of all allowances, whether spent or unspent, in the course of calculating Renewal Term rent. This was error, Landlord claimed, because paragraph 3(b) only permits Tenant to deduct unspent allowances from fair market rent "on an equitable basis." Thus, the court should only have permitted deduction of a portion of unspent allowances, which would have made 90% of fair market rent after allowances greater than immediately preceding rent.

This argument is unavailing. The trial court determined, and we agree, that a 100% deduction of unspent allowances is equitable because it benefits both parties:

> The credible evidence in this case supports a finding that a dollar-for-dollar deduction from Fair Market Rent and application of an amortization rate was the appropriate manner to account for unelected and unpaid tenant concessions awarded to [Tenant] in the [July 2009 arbitration] Proceeding. The dollar for dollar deduction for unelected and unpaid tenant concessions benefits the tenant and the landlord. It

15

provides the tenant with an inducement to remain in the property and to renew its lease at a market competitive rent. The landlord eliminates the problem of a costly vacancy and is not required to pay for unneeded and/or unwanted improvements. If no funds are expended by the landlord, it is only fair that the tenant receives the full benefit of the unspent funds by reducing its rent accordingly[14].

Since a 100% deduction is proper, 90% of fair market rent after allowances is lower than immediately preceding rent of $3,187,563.00, leaving $3,187,563.00 as annual Renewal Term rent.

Landlord also seeks a new trial based on two evidentiary rulings. First, Landlord argues that the court improperly excluded evidence that would have shown that a 100% deduction of the tenant improvement allowance and brokerage commission was inequitable. In particular, Landlord objects to the exclusion of evidence of rents and profits that Tenant made by subleasing space to its students.

"The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law." **B.K. v. J.K.**, 823 A.2d 987, 991–92 (Pa.Super.2003). "Thus, our standard of review is very narrow.... To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party."

---

[14] Trial Court's Conclusions Of Law, ¶¶ 6-7.

*Hawkey v. Peirsel*, 869 A.2d 983, 989 (Pa.Super.2005) (citing *Turney Media Fuel, Inc., v. Toll Bros.,* 725 A.2d 836, 839 (Pa.Super.1999)).

Assuming that the court improperly excluded evidence of rents that Tenant obtained through subleases, Landlord fails to demonstrate that admission of this evidence would have changed the outcome. The court enjoyed broad discretion in deciding whether a 100% deduction of unspent allowances was "equitable". Had the court admitted this evidence, Landlord fails to show that it would have changed the court's conclusions that 100% deduction benefited both Landlord and Tenant[15]. Further, Tenant correctly notes that Landlord was able to introduce some of this evidence through cross-examination of Tenant's expert witness[16].

Second, Landlord argues that the court improperly quashed subpoenas issued shortly before trial to Tenant's experts to bring all documents to trial in their possession relating to rent rates Tenant charged its students for the apartments it leased from Landlord; the percentage of occupancy of the building; amendments and modifications to the Leases examined and relied upon by Tenant's experts; profits Tenant derived from subletting the apartments to its students; and comparable apartment building leases that Tenant entered.

We review a challenge to an order quashing a subpoena for an abuse of discretion. *Slusaw v. Hoffman*, 861 A.2d 269, 272 (Pa.Super.2005).

---

[15] Trial Court's Conclusions Of Law, ¶¶ 6-7.
[16] Brief for Tenant, p. 49.

We will affirm the trial court's determination so long as there is any evidence supporting it, and we will not substitute our judgment for the trial court. **Id**.

We conclude that the court acted within its discretion by quashing the subpoenas as untimely. Landlord issued these subpoenas immediately before trial, giving Tenant's experts virtually no time to gather the voluminous materials that Landlord demanded. Moreover, this ruling caused Landlord no discernible prejudice, because Landlord's counsel was able to cross-examine Tenant's expert on the issues in question, and Landlord cannot demonstrate that production of the documents in question would have changed the outcome of trial.

For the foregoing reasons, we vacate the judgment entered on May 6, 2013. We conclude that rent for each year in the Renewal Term is not less than $3,187,563.00. We remand with directions that the trial court determine the amount of rent Tenant has paid to date and order Tenant to pay Landlord the difference between the amount Tenant has paid and the amount owed consistent with our decision.

Order vacated, jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/22/2014