**Abeln v. Abeln**

*Anthony M. Muir*, for plaintiff.
*Heidi C. Noll*, pro se.

FORD, *P.J.*, April 20, 2011—In this appeal, plaintiff, Paul Abeln, challenges an order that I entered on March 8, 2011, denying his petition to enroll the parties' child, Paul Christopher Abeln, in kindergarten at Saint Joseph

the Worker Catholic School for the next academic year. Defendant, Heidi C. Noll, wants her child enrolled in the local public school, Kernsville Elementary School in the Parkland School District. In the March 8 order, I directed that the child be enrolled for kindergarten in Kernsville, the public school.

Mr. Abeln claims that the March 8 order does not serve Paul Christopher's best interests. He also alleges that the order is overly broad based on his interpretation that it mandates that the child undergo his entire elementary school education in the Parkland School District. Mr. Abeln's third contention is that his due process and equal protection rights were violated in the way I conducted the hearing. Each allegation lacks merit.

In Lehigh County, the court attempts to have the same judge address all petitions which are filed from time to time in a family's custody case. I was assigned this case in 2008. Since then, both parties have filed multiple petitions. They have appeared before me repeatedly for hearings on these petitions from 2008 to the present. The hearings included a trial which covered five days from late March into early April, 2009, on Mr. Abeln's petition to modify custody and Ms. Noll's petition to relocate to the state of Arizona. The parties have also been before me in the courtroom on their divorce and property issues. One of the items in the record sent to the Superior Court is the docket. It provides a glimpse of the extraordinary frequency with which these parties file petitions and come to the courtroom. Through these hearings, I know the parties well. As to litigation matters, Mr. Abeln and Ms. Noll contest almost everything. They repeatedly show incivility to each other. They make

personal attacks upon each other during their testimony. They drift into extraneous matters. This litigation requires the judge to be actively involved in directing all of their hearings.

The educational experience for the child is more beneficial when both parents are invested in the process. Unfortunately, that is unlikely to happen at Saint Joseph based on an earlier incident that Mr. Abeln orchestrated at the Saint Joseph parish church for Paul Christopher's baptism. This incident understandably created distrust in Ms. Noll in any dealings that Mr. Abeln would have with Saint Joseph parish. The incident is best described in three findings of fact from my May 18, 2009, opinion following the custody trial.

23. Father was raised in the Roman Catholic faith. Mother was raised in the Lutheran faith. The parties discussed religion for Paul Christopher on a number of occasions. Mother made it clear to father that she wanted to be part of any decision pertaining to Paul Christopher's faith and baptism in particular.

24. Notwithstanding a specific court prohibition, on April 26, 2007, father registered the Abeln family at St. Joseph the Worker Church in Orefield, Pennsylvania. (See Exhibit D-19). He registered Paul Christopher for Catholic baptism. He registered for the August 4, 2007, baptismal workshop. Then he scheduled Paul Christopher's baptism for late 2007. He chose the Godparents for Paul Christopher. All of this was done without the knowledge or consent of mother even though she shared legal custody with him at the time.

25. On December 2, 2007, mother with her friend, Colleen Geiger, went to St. Joseph's church in the early afternoon. They saw vehicles with New Jersey license plates. Inside the church was father with the child and party assembled for the child's baptism. The child was baptized.

As part of the record sent to the Superior Court, I include the May 18, 2009, opinion, which contains the findings of fact from the 2009 custody trial. It should provide insight for the Superior Court about the parents, child, and the dynamics of the relationships. Thus, a factor in my decision was the way Mr. Abeln went about the baptism at Saint Joseph which created a taint for Ms. Noll in educating the parties' son there.

A second reason for directing that Paul Christopher be enrolled in public school rather than Catholic school is the fashion in which the parents have addressed religion with their son. Mr. Abeln attends Catholic services at Saint Joseph's parish. Mother is now a member of the Jordan United Church of Christ. Both parents practice and try to teach their respective religious beliefs to their son.

Ms. Noll objects to having Paul Christopher educated at a Catholic school where the Catholic religion will be part of the curriculum. She testified that the instilling of principles of religion by both parents during the child's extra-curricular time with the parents is sufficient and proper. At the hearing just conducted, Ms. Noll directed the court to paragraph 22 of the May 15, 2009, order which was entered after the custody trial. In that part of the order, each parent was permitted to "provide religious instruction

to the child during each parent's respective period of custody." Note that the issue of religious training by each parent, following the baptism incident at Saint Joseph church, reached a level of contention which caused me to include in paragraph 22 the following: "It is appropriate that the parental approach to religious issues in respect to the child's religious training and practice be discussed in therapy."

Mother has a concern that placing Paul Christopher in a Catholic school will undermine her attempts to instill her religious values in Paul Christopher. Her concern is not groundless. Under the circumstances of this case, for each parent to be on an equal footing in providing religious instruction for the child, the child should not be placed in a Catholic curriculum particularly at this parish where the baptism incident took place.

The final factor that I considered was the relative strength of the public school and the parochial school and circumstances surrounding attendance at each. As the record from the March hearing demonstrates, both of these schools are academically excellent. Both would provide wonderful educational opportunities for Paul Christopher. Under what was presented, there is insufficient basis to find that one school is superior to the other.

I considered each point raised by each parent. Many of the benefits that Mr. Abeln explained for Saint Joseph students apply comparably to Parkland School District students, such as attendance with the same students through each school year, contact with classmates outside the classroom, class size, a sense of community among the

students and cost when one factors Catholic school tuition and child-care expense. Both schools have child-care options that make attendance at both schools practical for these parents. The child-care options are different at the schools but the parents' respective duties and schedules make both options workable.

Placing Paul Christopher in public school was a proper exercise of my discretion based upon my considerable knowledge of the parties through hearings over many months and based upon the evidence presented at the March hearing. The placement of Paul Christopher at Kernsville Elementary School will serve Paul Christopher's best interests.

Mr. Abeln's next contention is that "the order was overly broad because it required the parties to enroll the minor child in the Parkland School District for his entire elementary school education beginning with kindergarten in the fall of 2011." The part of the March 8, 2011, order which is challenged here reads: "The parties' child, Paul Christopher Abeln, shall be enrolled in the Parkland School District for his elementary school education beginning with kindergarten in the fall of 2011." A common sense reading of this sentence of the order reveals that it is a proper provision.

It is recognized that it is the court's obligation to consider subsequent petitions with the circumstances then existing to resolve issues as they arise. At one time, Pennsylvania courts declined to grant petitions to reconsider earlier custody orders unless the petitioning party demonstrated that there had been a substantial change in the parties'

circumstances. There has been a change. The Superior Court of Pennsylvania explained:

> It is settled law in Pennsylvania that a custody order is subject to modification *without proof of substantial change in circumstances* when it is shown that change is in the best interests of the child. Whenever a court is called upon to address the best interests of a child, traditional burdens or presumptions such as substantial change in circumstances, the fitness of one parent over another, or the tender years doctrine must all give way to the paramount concern; the best interests of the child. *Jordan v. Jackson*, 876 A.2d 443, 452 (Pa. Super. 2005) (quoting *Clapper v. Harvey*, 716 A.2d 1271, 1273 (Pa. Super. 1998)) (emphasis in original).

The point of the challenged provision in the March 8, 2011, order is that the court is directing that Paul Christopher attend public school for each year unless the parties agree otherwise or the court directs otherwise. This sentence was placed in the order to forestall unnecessary petitions when Paul Christopher finishes each of his school years. If it becomes appropriate for the court to reconsider the order, for example, if Parkland is no longer the proper school district based upon the residences of the parents, the court should and would re-visit the school issue. The requirement to look at the circumstances on the filing of any subsequent petition is presumed based upon Pennsylvania law. There is no need to change the wording of this order.

The final contention is that "[t]he plaintiff was denied the right to a full hearing on the issue of where the minor

child should attend elementary school." Mr. Abeln claims that he was denied his due process and equal protection rights in the fashion in which I conducted the hearing. He says that I cut him off and I did not allow him to make a full presentation on the issue.

When the parties appeared for hearing on March 4, in addition to Mr. Abeln's petition about school, I also had before me Ms. Noll's petition for contempt filed on January 25 and a second petition from Mr. Abeln which was filed on February 11, which he termed an "emergency petition" to freeze Ms. Noll's assets pending decision on the equitable distribution issues. After the part of the hearing during which evidence was taken on the school issue, I took evidence on the other two petitions. The Abeln matters were not the only cases that I had on March 4. I was the motions-miscellaneous judge on March 4. The record of the Abeln hearing reveals that, before that hearing started, I addressed unrelated matters in the courtroom. The record of the Abeln hearing also reveals that I had another custody hearing to be conducted following the Abeln hearing. It also reflects that I had other unrelated matters still to be heard. This was a busy hearing day for me. (N.T., 3/4/11, pp.2, 11,37)

On March 4 in the Abeln hearing, I had to strike the balance among several factors. I had to be informed so that I could make a proper decision for Paul Christopher pertaining to his school. I had to be fair to the parties in terms of permitting them to present relevant evidence on the issue. I also had to be fair to the litigants in the unrelated cases so that their matters could be reached. Based upon my knowledge of this family from my many prior hearings

with them and from the evidence presented during the March hearing, I was fully informed on the issue. They each fully presented their evidence on the issue during their cases-in-chief. The only curtailing of Mr. Abeln's presentation occurred when he attempted a rebuttal to Ms. Noll's evidence by referring to a "recent evaluation." (N.T., 3/4/11, p.15) I did not allow that hearsay. Then, when I was announcing my decision on the school issue, he referred to evidence about the baptism issue. (N.T., 3/4/11, p.17) I did not permit that. That matter had been litigated, with findings of fact, two years previously.

The record reflects that I allowed each party a complete presentation on the school issue. I kept the hearing on track. I did not permit improper rebuttal from Mr. Abeln. There were no due process or equal rights violations.