J-S21001-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| D.C.S.-R. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| P.R. | |
| Appellant | No. 2849 EDA 2015 |

Appeal from the Order August 21, 2015
In the Court of Common Pleas of Wayne County
Civil Division at No(s): 398 DR 2011

BEFORE:  BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED APRIL 04, 2016**

P.R. ("Father") appeals *pro se* from the order entered August 21, 2015, in the Court of Common Pleas of Wayne County, which denied his petition for primary physical custody of his minor son, J.P.R., born in February of 2009 ("Child").  After careful review, we affirm.

A prior panel of this Court summarized the factual and procedural history of this matter as follows.

> The parties married on October 2, 2004 in New Jersey.  On August 8, 2011, [D.C.S.-R. ("Mother")] filed for divorce.  At the time of filing, Mother lived in Wayne County and Father lived in Bucks County.  Mother has three children from a prior marriage. On September 1, 2011, Mother filed a custody complaint.

---

[*] Former Justice specially assigned to the Superior Court.

On September 20, 2011, Mother obtained a protection from abuse ("PFA") order against Father that provided Father with custody of Child every other weekend. On November 14, 2011, the court entered an interim custody agreement that provided for the same custody as outlined in the PFA. On January 17, 2012, the court entered another interim custody agreement that outlined the same custodial time.

On March 16, 2012, a court-appointed master began a custody hearing. Hearings continued sporadically until June 21, 2012. On June 29, 2012, the master issued his report. On July 31, 2012, the court entered a custody order adopting that report and providing for joint legal custody, shared physical custody during the summer of 2012, whereafter custody reverted to the every other weekend schedule that had previously been in effect.

Much of the custody litigation has stemmed from Child's special needs. The parties disagreed about what services Child needs and who should provide those services. The Early Intervention Program in Wayne County evaluated Child in 2011 and identified a feeding/eating issue, with an underlying sensory-processing component. …

The parties divorced on July 19, 2013. On September 23, 2013, Father commenced the current phase of this litigation when he filed a petition to modify custody…. The trial court held hearings on Father's petition on December 10, 2013, and January 24, 2014.

***

On February 18, 2014, the trial court issued an opinion and order providing for shared legal custody, primary physical custody with Mother, and every other weekend partial custody with Father.

On March 11, 2014, Father filed his notice of appeal. He filed his statement of matters complained of on appeal on March 27, 2014.

***D.C.S.-R. v. P.R.***, No. 790 EDA 2014, unpublished memorandum at 1-4 (Pa.

Super. filed Nov. 7,2014) (footnotes omitted).

On November 7, 2014, this Court affirmed the February 18, 2014 order. Father subsequently filed a petition for modification of custody on December 8, 2014. In his petition, Father requested, *inter alia*, an alternating week custody schedule during the summer. By order dated April 6, 2015, and entered April 9, 2015, the trial court adopted the parties' stipulation that Father would exercise physical custody of Child on alternating weeks during the summer. On April 8, 2015, Father filed an additional petition to modify custody, asking that he be awarded primary physical custody of Child. A custody hearing was held on August 18, 2015, during which the trial court heard the testimony of Child's former kindergarten teacher, Jennifer Morgan; Father; Child's pediatrician, Dr. Robert Morton; and Mother. Following the hearing, on August 21, 2015, the trial court entered its order denying Father's petition to modify custody. Father timely filed a notice of appeal on September 21, 2015, along with a concise statement of errors complained of on appeal.[1]

Father now raises the following issues for our review.

---

[1] We note that Father had thirty days to appeal the trial court's custody order, meaning that his notice of appeal would normally be due by September 20, 2015. **See** Pa.R.A.P. 903(a) ("Except as otherwise prescribed by this rule, the notice of appeal … shall be filed within 30 days after the entry of the order from which the appeal is taken."). However, because September 20, 2015, was a Sunday, Father's notice of appeal was timely filed on Monday, September 21, 2015. **See** 1 Pa.C.S. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday, … such day shall be omitted from the computation.").

I. Did the trial court err and/or abuse its discretion in summarily concluding and ruling, at the custody hearing, Mother's domicile in New Jersey was not a residence, when Mother had clearly identified the permanently affixed camper as being located … in Little Egg Harbor, New Jersey and where Mother and minor child have spent a large part of the calendar year for the past 3 years?

II. Did the trial court err in not making a reasonable decision and/or in not taking appropriate action to address and resolve the unreasonable, cumbersome and regular shuffling of the minor child between Bucks County, Wayne County and the State of New Jersey for multiple monthly trips to visit maternal relatives in Bucks County, visit [C]hild's siblings in New Jersey, and to visit Mother's "second residence" aa233in [*sic*] New Jersey, on top of the long travels to effectuate exchanges between the parties; when the trial court stated at the conclusion of the hearing that "it (the court) shares Father's concerns over the back and forth of the minor child and that it (the court) may do something about it"[?]

III. Did the trial court err and/or abuse its discretion in not ordering Mother to move with the minor child to the Bucks County area, near her family and Father's; where Mother and [C]hild are in the area regularly and in close proximity to Father's [home] when visiting Mother's "second residence" in New Jersey, when [the] minor child is visiting his siblings in New Jersey, when Mother and [C]hild are visiting maternal family near Father's and where all of Mother's extended family, with the exception of her father, live in or near the Bucks County area?

IV. Did the trial court err and/or abuse its discretion in denying Father's Petition to modify primary physical custody?

V. Did the trial court err and/or abuse its discretion by exhibiting blatant partiality, prejudice, bias and/or ill will towards Father as demonstrated by evidence of record?

Father's brief at 2-3 (trial court answers omitted).[2]

_____

[2] In Mother's appellee brief, she states that Father commenced the current custody proceeding "despite the fact that no substantial change in circumstances had occurred from the last custody trial." Mother's brief at 5. *(Footnote Continued Next Page)*

We consider these issues mindful of our well-settled standard of review.

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***V.B. v. J.E.B.***, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." ***S.W.D. v. S.A.R.***, 96 A.3d 396, 400 (Pa. Super. 2014)

---

*(Footnote Continued)* ————————————

In response, Father submitted a reply brief in which he contends, *inter alia*, that a substantial change in circumstances has occurred. Father's Reply Brief at 1-5. This issue also arose during the custody hearing. **See** N.T., 8/18/2015, at 51 (Mother's counsel stating, "I still think you have to show that change in circumstances," and the trial court replying, "I know, I know that's why I keep saying new stuff now."). We advise the trial court and the parties, as did the panel of this Court that reviewed Father's last appeal, that a court may modify a custody order even if a substantial change in circumstances has not been shown. **See Clapper v. Harvey**, 716 A.2d 1271, 1273 (Pa. Super. 1998) (citing **Moore v. Moore**, 634 A.2d 163, 169 (Pa. 1993)) ("It is settled law in Pennsylvania that a custody order is subject to modification without proof of substantial change in circumstances when it is shown that change is in the best interests of the child.").

(citation omitted). The factors to be considered by a court when awarding custody are set forth at 23 Pa.C.S. § 5328(a).

> **(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
>
> (3) The parental duties performed by each party on behalf of the child.
>
> (4) The need for stability and continuity in the child's education, family life and community life.
>
> (5) The availability of extended family.
>
> (6) The child's sibling relationships.
>
> (7) The well-reasoned preference of the child, based on the child's maturity and judgment.
>
> (8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.
>
> (9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.
>
> (10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Instantly, the trial court issued an opinion explaining its decision to deny Father's petition for primary physical custody on September 17, 2015. In its opinion, the court discussed nearly all of the Section 5328(a) factors.[3] The court found that Sections 5328(a)(2), (6), (7), (8), (11), (14), and (15) did not weigh in favor of either parent, and that Sections 5328(a)(3), (5), (9), and (12) weighed in favor of both parents. Trial Court Opinion, 9/17/2015, at 4-7. The court concluded that Sections 5328(a)(1), (4), (10), and (13) weighed in favor of Mother. *Id.* With respect to Sections

---

[3] The trial court failed to address Section 5328(a)(2.1) in its opinion. However, there was no evidence presented during the custody hearing which related to this factor.

5328(a)(1) and (13), the trial court found that Mother agreed to expand Father's periods of physical custody during the summer months. *Id.* at 4, 7. With respect to Sections 5328(a)(4) and (10), the court found that Mother has implemented an award system with Child, which has helped improve Child's diet. *Id.* at 5-6. The court noted that it found Mother's testimony on this issue to be credible because Child's pediatrician, Dr. Morton, testified that Child's physical development is in the normal range. *Id.* at 5. The court also emphasized Mother's testimony that Child is less willing to eat after returning from his visits with Father. *Id.* at 6. The court expressed concern that awarding primary physical custody to Father could hinder Child's progress. *Id.* at 5. On October 27, 2015, the court issued a second opinion, pursuant to Pa.R.A.P. 1925(a)(2)(ii), in which it responded to the issues raised in Father's concise statement.

Father's first issue on appeal is that the trial court erred and/or abused its discretion by concluding that Mother's camper in New Jersey is not a second "residence." Father's brief at 22-27. Father argues that Mother has spent "a large part of the calendar year for the past 3 years" living in her camper, and that Mother keeps her belongings, as well as the belongings of Child, in the camper. *Id.* at 22-23. Father insists that the trial court's conclusion that Mother's camper is not a residence impacted its finding that Section 5328(a)(11) did not weigh in favor of either party. *Id.* at 25-26. Father suggests that Mother "was in all likelihood secretly living at this New

Jersey camper/house to be with her 'friends,' as she put it, and then having her parents care for [Child] and use their home as a 'front' to maintain custody…."[4] *Id.* at 26.

During the custody hearing, the trial court responded to Father's claim that Mother's camper is a second residence by stating, "It's a camper. I understand it's a camper, as far as I'm concerned it's not a second residence. Period! It's a vacation camper." N.T. 8/18/2015, at 122. In its opinion pursuant to Pa.R.A.P. 1925(a)(2)(ii), the trial court explained, "Whether [Mother's] house/camper in New Jersey is a 'second residence' was not a factor that [the trial court] took into consideration when making

---

[4] As part of this argument, and at various other points in his brief, Father suggests that the trial court should have made an "adverse inference" against Mother, because she "conceal[ed] the existence and address" of the camper. *See* Father's brief at 26, 31-32, 35-37, 43, 51, 56. We note that Father failed to preserve this issue for our review, as he did not include it in his concise statement, nor is it included in his statement of questions involved. *See Krebs v. United Refining Co. of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) ("We will not ordinarily consider any issue if it has not been set forth in or suggested by an appellate brief's statement of questions involved, and any issue not raised in a statement of matters complained of on appeal is deemed waived.") (citations omitted). Even if Father had successfully preserved this issue, it still would merit no relief. The record indicates that Father became aware that Mother had a camper after Child mentioned it to him sometime in 2014, at the latest. *See* N.T., 8/18/2015, at 30. Father asked Mother for the location of the camper on only one occasion, and Mother provided Father with the address within forty-eight hours. *Id.* at 56; Exhibit D-11. The record does not suggest that Mother concealed either the existence or the address of her camper from Father.

its final decision. Therefore, the . . . issue raised by [Father] is irrelevant."

Trial Court Opinion, 10/27/2015, at 3

After a thorough review of the record in this matter, we conclude that the trial court did not commit an error of law or abuse its discretion. Initially, we observe that the record supports the trial court's statement during the custody hearing that Mother's camper is not a residence. During the hearing, Mother testified that she has no schedule for how often she visits the camper, and that it is a "vacation spot," and not a home. N.T., 8/18/2015, at 99-101. There was no testimony indicating that Mother keeps her personal belongings there, or that she keeps Child's personal belongings there.

In addition, even if Father were correct that Mother spends a significant amount of time residing in her camper in New Jersey, it is not clear why Father believes this would warrant a reversal of the trial court's custody order. In his brief, Father insists that the trial court's conclusion that Mother's camper is not a residence is "not a harmless error," because it is "critically linked and central to [Child's] safety, among other things." Father's brief at 27. However, there was no evidence presented during the custody hearing which would suggest that Mother's camper is unsafe, nor was there evidence indicating that Mother's trips to and from the camper are unsafe. Father completely fails to explain what "other things" he is referring

to. This Court will not reverse the subject custody order based on Father's unsupported allegations and speculation.

Father's second issue is that the trial court erred and/or abused its discretion by failing to craft a custody order which remedies the "unreasonable, cumbersome, and regular shuffling" of Child between Father's residence, Mother's residence, and Mother's camper in New Jersey, among other locations. Father's brief at 27-35. Father contends that Child is subjected to frequent travel, which places "a serious burden" on Child, and which risks his safety. *Id.* at 28-31. Father states that Mother's trips with Child are dangerous, given her "fatigue, anxiety, Lyme disease, [and] Fibromyalgia, not to mention the prescribed medications she takes…." *Id.* at 31. Father also contends that Child has regular contact with only one of his half-siblings in New Jersey, and that "it would be better to have [that sibling] travel the distance, as opposed to [Child]…." *Id.* at 29. Father emphasizes that it was Mother's relocation to Wayne County in 2011 that caused Child to be subjected to these lengthy trips, and suggests that this situation would be improved upon if Child resided primarily with him, since Mother's other children and her camper in New Jersey are closer to Father's residence in Bucks County. *Id.* at 30, 33.

During the custody hearing, the trial court agreed with Father that the amount of time Child spends traveling is concerning. N.T., 8/18/2015, at 121 ("You're right, that's bothering me the traveling back and forth from

Philly six or seven hours.  That's bothering me.  So, I might correct that.").

In its opinion pursuant to Pa.R.A.P. 1925(a)(2)(ii), the court acknowledged

that there is a significant distance between Father's residence and Mother's

residence, and between Mother's residence and the residence or residences

of Child's half-siblings in New Jersey.  Trial Court Opinion, 10/27/2015, at 2.

However, the court found that it is in Child's best interest to maintain a

relationship with both Mother and Father, and with his half-siblings.  *Id.*

The court reasoned that long travel times for Child are unavoidable.  *Id.*

We agree with the trial court that it is in Child's best interest to

maintain a relationship with both Mother and Father, and with his half-

siblings, and that there is simply no way to eliminate long travel times for

Child.  We emphasize that there was no testimony during the custody

hearing that Mother's medical conditions are so severe as to make her trips

to New Jersey unsafe, other than a single statement by Father that Mother's

condition is "debilitating."  N.T., 8/18/2015, at 49.  Further, the record does

not indicate that Mother travels to and from New Jersey with such frequency

that it would create an unreasonable safety risk to Child.  While it may be

true that Child's traveling time could be reduced if Child resided primary with

Father, it was for the trial court, not this Court, to weigh that consideration

against other evidence presented during the custody hearing.  Because the

record supports the trial court's decision to maintain primary physical

custody with Mother, we discern no error of law or abuse of discretion.

Father's third issue is that the trial court erred and/or abused its discretion by not ordering Mother to relocate to Bucks County. Father's brief at 35-41. Father acknowledges that custody courts are not empowered to issue orders requiring parents to relocate. *Id.* at 40. However, Father insists that the trial court could "certainly make primary custody conditional upon a parent remaining to live or moving to a designated place, town, or residence." *Id.*

We again conclude that Father is not entitled to relief. As observed by both Father and the trial court, the Child Custody Act does not empower courts to order parents to relocate. *See* Trial Court Opinion, 10/27/2015, at 2-3. While Father insists that the trial court could have awarded primary physical custody to Mother contingent upon her relocation to Bucks County, Father did not include this issue in his concise statement of errors complained of on appeal. Father's concise statement makes no mention of the idea that the trial court should have made custody contingent upon relocation, and instead indicates only that the court should have ordered Mother to move. *See* Statement of Errors Complained of on Appeal Pursuant to Pa.R.A.P. 1925(a)(2), 9/21/2015, ("Did the trial court err and/or abuse its discretion in not ordering Mother to move with the minor child to the Bucks County area…."). Thus, this claim is waived. *See Krebs*, 893 A.2d at 797.

Father's fourth issue is that the trial court erred and/or abused its discretion by denying his petition for primary physical custody. Father's brief at 41-51. Father challenges the trial court's findings with respect to several of the Section 5328(a) factors. Specifically, with respect to Sections 5328(a)(1) and (13), Father observes that the trial court weighed these factors in favor of Mother because she agreed to an alternating week custody schedule with Father during the summer. *Id.* at 42, 50-51. However, Father claims that Mother only agreed to this change "because she feared that her misrepresentations to the [c]ourt at the 2014 custody trial regarding continued treatment of [Child] by Cindy Duffy and Wayne County Intervention Services, would be exposed if the summer custody dispute proceeded to a hearing."[5] *Id.* at 42-43. Father also emphasizes that Mother requested that Father's summer custodial periods be reduced in her most recent parenting plan. *Id.* at 43, 51.

With respect to Section 5328(a)(2), Father states that a restraining order was entered against Mother in New Jersey after she allegedly "assaulted her first ex-husband and his mother in front of Mother's three

_____

[5] Reportedly, Mother stated during the 2014 custody proceedings that Child would continue to receive treatment from both Ms. Duffy and Wayne County Early Intervention Services. *See* Father's brief at 14, 42-43. According to Father, these statements were misrepresentations because Child only saw Ms. Duffy on four occasions following the 2014 custody proceedings, and Child was discharged from Wayne County Early Intervention Services in June of 2014. *Id.* at 14.

other children…." *Id.* at 44-45. Father states that Mother failed to report the existence of the restraining order in the criminal affidavit submitted during the prior custody proceeding. *Id.* at 44-46. According to Father, this demonstrates that "Mother and her biological father do get involved in fights with their ex in-laws in front of her other children," which "poses a threat and risk of harm to [Child] given the nature of the relationship Mother has with Father." *Id.* at 45.

With respect to Sections 5328(a)(4) and (10), Father contends that the trial court erroneously concluded that Mother has helped to improve Child's diet, and that Child is more unwilling to eat after returning from his visits with Father. *Id.* at 46, 49-50. According to Father, Mother has not improved Child's eating habits, as Child continues to eat the same things that he was eating during the last custody hearing. *Id.* at 46. Father also questions the testimony of Child's pediatrician, Dr. Robert Morton, who indicated during the custody hearing that he did not believe it was necessary for Child to receive treatment from a feeding specialist or a nutritionist. *See* N.T. 8/18/2015, at 70-71, 83. Dr. Morton noted during his testimony that he was unable to review Child's medical chart, because the chart is stored electronically, and "Our computer system … crashed this morning…." *Id.* at 73, 82. Father claims that Dr. Morton was lying when he claimed that Child's chart was unavailable, and that "it is abundantly clear that [the] pediatrician decided to advise Father … that [Child's] chart was unavailable,

at the behest of Mother's attorney, and some other person or entity." Father's brief at 48.

We again discern no error of law or abuse of discretion. Concerning Sections 5328(a)(1) and (13), it was reasonable for the trial court to weigh these factors in favor of Mother, given that she agreed to expand Father's periods of physical custody during the summer. Mother's actions suggest a willingness to promote Child's relationship with Father, and to cooperate with Father. While Father suggests that Mother only agreed to expand his periods of physical custody due to an ulterior motive, this claim, like the majority of Father's others claims, is mere speculation.

Concerning Section 5328(a)(2), Mother conceded during cross-examination that a restraining order was entered against her in New Jersey "many years ago." N.T., 8/18/2015, at 109. When Father asked Mother whether the order was entered as a result of an assault on Mother's ex-husband, Mother's counsel objected on the basis of relevance, and the trial court ultimately sustained counsel's objection on the basis that it was outside the scope of Mother's direct examination.[6] *Id.* Thus, there was no

---

[6] While Father asserts that the trial court's evidentiary ruling was unfounded, he does not cite to any authority in support of the proposition that the court erred by sustaining counsel's objection, nor did he preserve a challenge to the court's ruling in his concise statement or statement of questions involved. *See In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011), *appeal denied*, 24 A.3d 364 (Pa. 2011) (quoting *In re A.C.*, 991 A.2d 884, 897 (Pa. Super. 2010)) ("'[W]here an appellate brief fails to provide any discussion of
*(Footnote Continued Next Page)*

evidence admitted during the custody hearing that Mother assaulted her ex-husband, nor was there any evidence which proves that Mother continues to "get involved in fights," as Father suggests. Moreover, the record indicates that a PFA order was entered against Father in 2011. Both parents have been the subject of PFA proceedings, or their New Jersey equivalent, and the existence of a restraining order against Mother does not prove that she poses any more of a risk to Child than Father does.[7]

Concerning Sections 5328(a)(4) and (10), Mother testified during the custody hearing that she has implemented an award system for Child, whereby Child is not permitted to engage in certain activities, like going to the park the following day, if he fails to eat appropriate amounts of food. N.T., 8/18/2015, at 90-91, 93. Mother stated that Child is continuing to make progress with his diet and eating habits. *Id.* at 88-90, 92, 102. Mother expressed concern, however, that Father discusses Child's eating habits during "every conversation" that Mother witnesses between Father and Child, and that these conversations cause Child to "shut[] down." *Id.* at 94. Mother noted that Child displays "consistent regression" when he

_(Footnote Continued)_ ─────────────

a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."'); *Krebs*, 893 A.2d at 797.

[7] In his reply brief, Father states that he agreed to a "no-fault, no admission of liability final PFA" after Mother "accus[ed] him of 'breaking into' the parties former marital home…." Father's Reply Brief at 1.

returns from Father's periods of physical custody, in that he is "[m]uch more resistant when he comes home, as far as our routine and not wanting to eat certain things and get out of it." *Id.* at 94, 114. The trial court was free to credit Mother's testimony that she has improved Child's diet, and that Father's custodial periods have an adverse impact on Child's eating habits. Additionally, we stress that Father's allegation that Dr. Morton was lying when he stated that he did not have access to Child's chart is completely baseless and unsupported by the record.

Father's fifth issue is that the trial court erred and/or abused its discretion by exhibiting "blatant partially, bias and/or ill will towards Father…." Father's brief at 52-62. In the first portion of Father's argument, he contends that the trial court "has obviously taken the erroneous position that Father filed the underlying custody petition to harass Mother and to attempt to discredit the lower court's February 18, 2014 custody order…." Father's brief at 53. Father then proceeds to challenge the trial court's alleged position. *Id.* at 53-55. In the second portion of his argument, Father points to numerous incidents during the custody trial that he says demonstrate the trial court's bias. *Id.* at 55-62. Father insists that he was

"repeatedly scolded, chastised, challenged and interrupted by the [trial] court...."[8] *Id.* at 62.

In its opinion pursuant to Pa.R.A.P. 1925(a)(2)(ii), the trial court explained that it based its decision to maintain primary physical custody with Mother not on bias against Father, but on Father's failure to establish that a change in custody would be in Child's best interest. Trial Court Opinion, 10/27/2015, at 3. The court emphasized Mother's success in improving Child's eating habits, Child's regression after returning from Father's periods of partial physical custody, and the testimony of Dr. Morton that Child's physical development is within the normal range. *Id.*

Father's fifth issue does not entitle him to relief. First, we observe that Father offers no explanation as to why he believes that it is obvious that the trial court viewed his petition to modify as a means of harassing Mother or "discrediting" the prior custody order. This Court will not accept Father's unsupported accusations concerning the trial court's motives as a basis to reverse the subject custody order. Second, our review of the record has uncovered no evidence indicating that the trial court's decision in this matter

_____

[8] Father also theorizes that the trial court attempted to "appeal proof" of this matter by exaggerating the importance of Child's medical treatment in Wayne County, and engaging in "the arbitrary and capricious weighing of certain custody factors in favor or Mother...." Father's brief at 58-62. Because we have already concluded that the trial court's findings with respect to the relevant custody factors are supported by the record, we need not address this issue a second time.

was the result of partially, bias, or ill will against Father. While it is true that the trial court appears to have become frustrated with Father due to the repetitive nature of his testimony, *inter alia*, the court also became frustrated with Mother's counsel due to similar issues. **See**, **e.g.**, N.T., 8/18/2015, at 67 (responding to a question by Mother's counsel by stating, "I don't want to hear that. I've heard it I don't know how many times. I don't want to hear it from either of you anymore!"). Critically, as discussed throughout this memorandum, the trial court's decision to deny Father's petition for primary physical custody is supported by competent evidence of record, and the court issued two opinions in which it thoroughly articulated the reasons for its conclusion. Neither the court's decision, nor its reasoning, suggests that the court was motivated by anything other than entering a custody order in the best interest of Child.

Accordingly, because none of Father's claims entitles him to relief, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/4/2016